STATE OF NORTH CAROLINA v. JOHN ELVIS HUGHES

No. 59A00

(Filed 21 December 2000)

**Search and Seizure— investigatory stop—anonymous informant—insufficient indicia of reliability**

The Court of Appeals erred by reversing the trial court's decision to grant defendant's motion to suppress evidence obtained during an investigatory stop of the taxi that defendant was riding in based on information the police received from an anonymous tip giving a physical description of a dark-skinned Jamaican whose name and clothing description could not be recalled, who was going to North Topsail Beach, who sometimes came to Jacksonville on weekends before dark, who sometimes took a taxi, who sometimes carried an overnight bag, and who might be arriving on the 5:30 p.m. bus, because: (1) the detective had never spoken with the informant and knew nothing about the informant other than the captain's claim that the informant was a confidential and reliable informant; (2) there was no indication that the informant had been previously used and had given accurate infor-

mation or that his statement was against his penal interest; (3) there was no indicia of reliability when the only evidence showing that the identity of this informant was known is the captain's conclusory statement that the informant was confidential and reliable; (4) the information provided by the tip did not contain the range of details required to sufficiently predict defendant's specific future actions and could be associated with many travelers; and (5) the police did not have reasonable suspicion resulting from their subsequent corroboration.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 136 N.C. App. 286, 524 S.E.2d 70 (1999), reversing and remanding an order entered by Ragan, J., on 10 December 1998 in Superior Court, Onslow County. Heard in the Supreme Court 12 September 2000.

*Michael F. Easley, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*Edward G. Bailey and Lee E. Britt for defendant-appellant.*

*Clifford Clendenin O'Hale & Jones, LLP, by Walter L. Jones; and Seth H. Jaffee, Counsel, on behalf of the American Civil Liberties Union of North Carolina Legal Foundation, amicus curiae.*

FREEMAN, Justice.

This is an appeal as of right based on a dissent from the Court of Appeals below, reversing the trial court's decision in a controlled substance case to grant defendant's motion to suppress evidence. We conclude that the Court of Appeals erred, and we thus reverse that opinion.

On the morning of 13 March 1998, Detective Imhoff of the Jacksonville Police Department was sitting in the office of Captain Matthews of the Onslow County Sheriff's Department when Matthews received a phone call. At the call's conclusion, Matthews told Imhoff that he had been talking to a confidential, reliable informant who said that an individual nicknamed "Markie" would be arriving that day in Jacksonville by way of a bus coming from New York City, possibly the 5:30 p.m. bus. "Markie" was described as "a dark-skinned Jamaican from New York who weighs over three hundred pounds and is approximately six foot, one inch tall or taller, between

STATE v. HUGHES

[353 N.C. 200 (2000)]

twenty or thirty years of age[,] . . . who would be clean cut with a short haircut and wearing baggy pants," and who would have marijuana and powdered cocaine in his possession. The informant also indicated that Markie "sometimes" came to Jacksonville on weekends before it got dark, that he "sometimes" took a taxi from the bus station, that he "sometimes" carried an overnight bag, and that he would be headed to North Topsail Beach.

Later in the day, Detective Imhoff relayed this information by telephone to Detective Bryan of the Jacksonville Police Department and told him to go to the bus station, as the individual might be early. However, at the suppression hearing, Detective Bryan could not recall whether he had been given a description of defendant's clothing, nor could he recall whether he had ever been given the suspect's name. Detective Bryan further testified that he did not know what time defendant would arrive in Jacksonville or on which bus, only that he was coming in that afternoon.

When Detective Bryan and his partner, Detective McAvoy, reached the station, one bus from New York had already arrived, but a bus coming from Rocky Mount was scheduled to arrive around 3:50 p.m. Detective Bryan testified he knew that Rocky Mount was a transfer point between New York and Jacksonville, as were some other cities. When the bus arrived, it pulled in with its door facing away from the officers, blocking their view of the arriving passengers so that they could not see whether defendant stepped off of the bus. Detective Bryan testified, however, that defendant was not in the parking lot before the bus arrived and that he had stepped from behind the bus after it arrived. According to Detective Bryan, defendant matched the exact description he had been given and was carrying an overnight bag.

Defendant immediately stepped into a taxi and headed down Highway 17 South, toward an area called the Triangle, where Highway 17 splits in two directions—towards Wilmington and Topsail Beach, North Carolina, or towards Richlands, North Carolina. A person must pass through the Triangle before it can be determined in which of these directions he or she is going. However, the officers stopped defendant's taxi before it reached the Triangle area.

Upon stopping the taxi, Detective Bryan informed defendant that he was a police officer and explained why he had stopped the taxi. He then asked defendant if he would consent to a search, and defendant agreed. Detective Bryan conducted a pat-down search of defendant's

STATE v. HUGHES

[353 N.C. 200 (2000)]

person and searched the area of the taxicab where defendant had been sitting and the small bag defendant was carrying. After these searches, Detective Bryan asked defendant to remove his shoes, revealing marijuana in the toes of each shoe. A later search at the police station revealed bags containing cocaine in the tongues of the shoes. Defendant was charged with possession with intent to sell and deliver cocaine, possession with intent to sell and deliver marijuana, manufacturing cocaine, and manufacturing marijuana.

The question raised here on appeal is whether the evidence seized from defendant was legally obtained. The determination of the legality of the stop, and subsequent search, is partly dependant on the reliability of the information relied on by arresting officers in making the stop. In order to determine the reliability of the information received, we must first determine whether the information received by the officers was obtained from an anonymous informant or a confidential and reliable informant.

The two-pronged test for probable cause to search formulated by the United States Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723 (1964), and later refined in *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637 (1969), set forth the requirements for obtaining a search warrant based on information supplied by a reliable informant. This test required, first, that the affidavit must contain sufficient information that would allow a magistrate to understand how the informant obtained the information and, second, that the affidavit must establish the reliability of the informant. Reliability could be established by showing that the informant had been used previously and had given reliable information, that the information given was against the informant's penal interest, that the informant demonstrated personal knowledge by giving clear and precise details in the tip, or that the informant was a member of a reliable group such as the clergy.

The Court later abandoned this test in favor of the "totality of the circumstances" test established in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983). Under this test, the "basis of knowledge" and "reliability" or "veracity" prongs of the *Aguilar-Spinelli* test are still relevant, but instead of being independent of each other, they are "closely intertwined issues," where "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233, 76 L. Ed. 2d at 545.

This Court adopted the reasoning of *Gates* in *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984). In applying the test used in *Gates*, this Court also found the principles underlying *Aguilar* and *Spinelli*, mainly that evidence is needed to show indicia of reliability, to be important components in determining the totality of the circumstances.

Turning to the case before us, the evidence shows that Detective Imhoff had never spoken with the informant and knew nothing about the informant other than Captain Matthews' claim that he was a confidential and reliable informant. There was no indication that the informant had been previously used and had given accurate information or that his statement was against his penal interest nor, as will be discussed later, was there any other indication of reliability. Some objective proof as to why this informant was reliable and credible, other than just Captain Matthews' assertion passed to Detective Imhoff, and by him to Detectives Bryan and McAvoy, must support Detectives Bryan and McAvoy's decision to conduct a search. To hold otherwise would be to ignore the protections contained in the Fourth Amendment.

The State argues that this was a case of declaration against penal interest because, first, by his statement to Detective Imhoff, Captain Matthews indicated that he knew the informant, and second, since giving a false report to the police is a misdemeanor, the informant risked criminal charges if his information was not truthful. We are not persuaded by this argument, and we conclude that, under the circumstances, the burden of reliability was not met. Captain Matthews never testified at the suppression hearing, nor did he give any indication to Detective Imhoff or anyone else as to how he knew this informant or *why* this informant was reliable. The only evidence showing that the identity of this informant was known is Captain Matthews' conclusory statement that the informant was confidential and reliable.

Nor was this a statement against penal interest. Being held accountable for a false statement to the police necessarily requires that an individual's identity is known. Here, the record contains no evidence that the informant's identity was known to the officers directly involved in the arrest. Captain Matthews' conclusory statement, which was third-hand hearsay by the time Detectives Bryan and McAvoy relied on it, is insufficient indicia of reliability. Furthermore, making a false statement to the police, standing alone, is not against an individual's penal interest because doing so is not a

STATE v. HUGHES

[353 N.C. 200 (2000)]

crime. To be charged with the crime of making a false report to law enforcement agencies or officers, the evidence must show that the person willfully made a false or misleading statement to a law enforcement agency or officer *for the purpose of interfering with the law enforcement agency or hindering or obstructing the officer in the performance of his duties.* N.C.G.S. § 14-225 (1994)(emphasis added). We do not have any evidence before us indicating that all of these elements were or would have been fulfilled.

Without more than the evidence presented, we cannot say there was sufficient indicia of reliability to warrant use of the confidential and reliable informant standard. Accordingly, we analyze the anonymous tip standard in evaluating this case.

In *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301 (1990), the United States Supreme Court concluded that an anonymous tip could, under the totality of the circumstances, be sufficiently reliable to pass constitutional muster. *Id.* at 332, 110 L. Ed. 2d at 310. In *White*, a case described by the Court as "close," the anonymous caller indicated that an individual, Vanessa White, would have in her possession an ounce of cocaine in a brown attaché case. During the call, the informant told the police the precise apartment building and apartment number from which White would be leaving and the particular time she would leave, and also gave detailed information as to White's car and her final destination, Dobey's Motel. The police then observed White leave the specified apartment building, get into the car described in detail by the informant, and take the most direct route to the motel before they finally stopped White just short of her destination. *Id.* at 327, 110 L. Ed. 2d 306-07.

The Court in *White* emphasized, first, that the *Aguilar* and *Spinelli* standards for determining an informant's veracity, reliability, and basis of knowledge were important factors to consider in the context of an anonymous informant, as they were when involving a confidential, reliable informant. The Court stated that although an anonymous tip by itself rarely demonstrated the needed reliability, the tip combined with corroboration by the police could show indicia of reliability that would be sufficient to meet this burden. " 'Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized.' " *Id.* at 329, 110 L. Ed. 2d at 308 (quoting *Adams v. Williams*, 407 U.S. 143, 147, 32 L. Ed. 2d 612, 617-18 (1972)).

Second, the Court emphasized the importance that, "as in *Gates*, 'the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.' " *Id.* at 332, 110 L. Ed. 2d at 310 (quoting *Gates*, 462 U.S. at 245, 76 L. Ed. 2d at 552). Particularly significant was the fact that the informant in *White* was able to describe in detail not only existing facts such as Williams' car and apartment, but that the informant was able to predict Williams' *future behavior*, indicating "a special familiarity with respondent's affairs." *Id.* "When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.* The Court, in *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254 (2000), recently reiterated the importance of an informant's ability to predict the future behavior of the suspect. In that case, officers searched a young black male based on an anonymous tip stating that a young black male would be standing at a particular bus stop, wearing a plaid shirt and carrying a gun. The Court found that, aside from the tip, the officers had no independent reason to suspect J.L. of any wrongdoing, as he was just standing at the bus stop doing nothing in particular to indicate criminal activity. The Court also found that the tip itself completely lacked any prediction of future behavior and stressed its finding in *White*, that "[o]nly after police observation showed that the informant had accurately predicted the woman's movements . . . did it become reasonable to think the tipster had inside knowledge about the suspect." *Id.* at 270, 146 L. Ed. 2d at 260.

Third, the *White* Court articulated the differences between probable cause and reasonable suspicion, finding that in meeting the lesser standard of reasonable suspicion, the *Aguilar-Spinelli* factors were required to a lesser degree. *White*, 496 U.S. at 329-31, 110 L. Ed. 2d at 308-09. In so finding, however, the Court did not diminish the need for indicia of reliability, finding instead that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.* at 330, 110 L. Ed. 2d at 309.

The case before us also involves the investigatory stop of an automobile, as defendant's taxi was stopped en route. *Terry v. Ohio* and its progeny have taught us that in order to conduct a warrantless, investigatory stop, an officer must have reasonable and articulable

suspicion of criminal activity. 392 U.S. 1, 20 L. Ed. 2d 889 (1968). An anonymous tip can provide reasonable suspicion as long as it exhibits sufficient indicia of reliability. *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260; *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309. As previously stated, a tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration. *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260 ("there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop' ") (quoting *White*, 496 U.S. at 327, 110 L. Ed. 2d at 306).

What is crucial to the determination of whether the anonymous tip in the instant case was sufficiently reliable to create reasonable suspicion justifying the stop was the information known to the officer *before* the stop was made. *J.L.*, 529 U.S. at 270, 146 L. Ed. 2d at 260 ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search."). In the context of an anonymous tip, this means that a tip must have sufficient indicia of reliability, and if it does not, then there must be sufficient police corroboration of the tip before the stop may be made. *White*, 496 U.S. at 329, 110 L. Ed. 2d at 308 ("This is not to say that an anonymous caller could never provide the reasonable suspicion necessary for a *Terry* stop"; however, most tips require something more, like police corroboration, before obtaining the level needed for reasonable suspicion.). If reasonable suspicion for the stop exists before the stop is made, there is no violation of the Fourth Amendment.

In examining the case before us, our review is limited. It is the trial judge's responsibility to make findings of fact that are supported by the evidence, and then to derive conclusions of law based on those findings of fact. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Where the evidence presented supports the trial judge's findings of fact, these findings are binding on appeal. *Id.* ("[T]he scope of appellate review . . . is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."). This deference is afforded the trial judge because he is in the best position to weigh the evidence, given that he has heard all of the testimony and observed the demeanor of the witnesses. As we said in *State v. Smith*, "[w]here the evidence is con-

flicting, . . . the judge must resolve the conflict. He sees the witnesses, observes their demeanor as they testify and by reason of his more favorable position, he is given the responsibility of discovering the truth. The appellate court is much less favored because it sees only a cold, written record." 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied*, 403 U.S. 934, 29 L. Ed. 2d 715 (1971). The trial court's conclusions of law, however, are fully reviewable on appeal.

As stated earlier, an anonymous tip can form the basis of reasonable suspicion as long as there is sufficient indicia of reliability either from the tip alone or after police corroboration. The reasonable suspicion must arise from the officer's knowledge prior to the time of the stop. In this case, a review of the facts shows that Detectives Bryan and McAvoy had a physical description of a dark skinned Jamaican whose name and clothing description could not be recalled, who was going to North Topsail Beach, who "sometimes" came to Jacksonville on weekends before dark, who "sometimes" took a taxi, and who "sometimes" carried an overnight bag. The only other information the officers had was that defendant might be arriving on the 5:30 p.m. bus.

We conclude that, on its own, this tip is not sufficient to create a reasonable suspicion. Unlike the tip in *White*, wherein the informant gave specific details regarding White's apartment building (including the specific apartment number), her car (including the fact that the right taillight lens would be broken), the particular time she would be leaving, and her specific destination within the community, the informant here gave comparatively vague information. For instance, the informant here described the suspect's pants as "baggy" without giving any indication as to what color they were or any other information as to the rest of the suspect's clothing. The informant was vague regarding the time of the suspect's arrival—"possibly" the 5:30 p.m. bus—and did not specify where defendant would have the drugs in his possession. Although the informant's description of "Markie" himself was more detailed, this description alone is not enough, as it could be attributed to any number of travelers.

Even more important for purposes of its reliability, the information provided did not contain the "range of details" required by *White* and *Gates* to sufficiently predict defendant's specific future action, but was instead peppered with uncertainties and generalities. The tipster stated that "Markie" "sometimes" came to Jacksonville on weekends, "sometimes" took a taxi from the bus station, "sometimes"

carried an overnight bag, and would be headed to North Topsail Beach. As well as being vague, these statements are broad enough to be applied to many of the bus station patrons. It is highly likely that any number of weekend travelers to Jacksonville, where a large military base is located, would take a bus; that they might bring an overnight bag; and that unless they had someone pick them up from the station, they would take a taxi to their final destination, which could include North Topsail Beach. Because we find that the tip taken as a whole was insufficient to create a reasonable suspicion, we next look to see if it was made sufficient by independent police corroboration.

It appears from the record that the only items of the informant's statement actually confirmed by the officers before the stop were that they saw a man meeting the suspect's description come from around a bus that had arrived in Jacksonville at approximately 3:50 p.m., that he was carrying an overnight bag, and that he left the station by taxi. Without more, these details are insufficient corroboration because they could apply to many individuals. Furthermore, the officers did not see defendant get off the bus, and the bus arrived an hour and a half earlier than the tipster had predicted.

Likewise, reasonable suspicion does not arise merely from the fact that the individual met the description given to the officers. As the Court stated in *J.L.*,

[a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*J.L.*, 529 U.S. at 272, 146 L. Ed. 2d at 261. Here, before stopping the taxi, the officers did not seek to establish the reliability of the assertion of illegality. They did not confirm the suspect's name, the fact that he was Jamaican, or whether the bus from Rocky Mount had originated in New York City. Moreover, because the officers stopped the taxi before it reached the Triangle area, they failed to corroborate whether the individual might be headed to North Topsail Beach, as the informant had stated, or to Wilmington, Richlands, Kinston, or some other destination.

**STATE v. HUGHES**

[353 N.C. 200 (2000)]

The State argues that, as in *White*, defendant here was "at least headed in that general direction." This is simply not enough detail in an anonymous tip situation to support the reasonableness of the officers' suspicion. Unlike *White*, where the suspect had taken the most direct route to a specific destination, Dobey's Motel, and was stopped just short of the motel on the road where the motel was located, *White*, 496 U.S. at 327, 110 L. Ed. 2d at 307; the suspect here was approximately twenty miles from his supposed general destination of North Topsail Beach and was stopped before it could even be determined which of several directions he would take. Whereas *White* was considered a "close case," the case before us is not. *J.L.*, 529 U.S. at 271, 146 L. Ed. 2d at 260 ("Although the Court held that the suspicion in *White* became reasonable after police surveillance, we regarded the case as borderline. . . . We accordingly classified *White* as a 'close case.' "). Instead, this case is more akin to *J.L.*, in which the Court found that, under the totality of the circumstances, there was not enough information to amount to reasonable suspicion. Here, the trial judge found in his conclusions of law that, given the "totality of the circumstances," the officers did not have reasonable suspicion resulting from either the tip itself or their subsequent corroboration, and that the tip could be associated with many travelers. Finding that the officers acted without the requisite reasonable suspicion, the trial judge concluded that their actions were in violation of the Fourth Amendment and held the evidence inadmissible.

Our review of the transcript indicates that the trial judge's findings of fact, made by a seasoned trial judge who observed the State's witnesses and their demeanor, are amply supported by the evidence and that his conclusions of law are in accord with both the findings of fact and current Fourth Amendment case law. As the anonymous tip and police corroboration in this case do not approach the level required in *White* to be a "close case," we conclude that defendant's Fourth Amendment protections were violated. We therefore reverse the decision of the Court of Appeals and uphold the trial court's order allowing defendant's motion to suppress.

REVERSED.