STATE OF NORTH CAROLINA v. KELVIN JAMES JOHNSON

No. COA09-908

(Filed 1 June 2010)

**Search and Seizure— motion to suppress—anonymous tip— insufficient indicia of reliability**

The trial court erred in denying defendant's motion to suppress evidence seized in connection with his detention and the search of his vehicle. The anonymous tip by which officers justified the warrantless stop of defendant's car did not contain suffi-

cient indicia of reliability. Moreover, *Arizona v. Gant*, 556 U.S. ——, applies retroactively and the search of defendant's car following his arrest for driving with a suspended license was unconstitutional.

Appeal by defendant from judgment entered 29 September 2008 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 12 January 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Scott Stroud, for the State.*

*Michele Goldman for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Kelvin James Johnson ("defendant") appeals the denial of his motion to suppress evidence seized in connection with his detention and the search of his vehicle. After denial of said motion, defendant pled guilty to (1) possession of a firearm by a felon, (2) two counts of possession of a stolen firearm, (3) one count of carrying a concealed weapon, and (4) one count of driving while license revoked. Defendant also admitted to attaining habitual felon status. The trial court consolidated defendant's convictions and sentenced him as a Class C, Level IV offender.

After review, we conclude that the trial court erred when it held, as a matter of law, that the anonymous tip possessed sufficient indicia of reliability to justify the officers' warrantless stop of defendant's car. Moreover, because *Arizona v. Gant*, 556 U.S. ——, 173 L. Ed. 2d 485 (2009), applies retroactively, we conclude that the warrantless search of the defendant's car following his arrest for driving with a suspended license was unconstitutional. As such, we hold that defendant's motion to suppress was improperly denied, and all the State's evidence of contraband and weapons should have been suppressed.

## I. FACTUAL BACKGROUND

At trial, the State's evidence showed the following: On 19 September 2007, Sergeant Osborne and Officer Dickerson were working for the Winston-Salem Police Department. They were riding together and assisting Officer Navy who had been assigned to respond to an anonymous tip that dispatch received at 12:14 p.m. that day. The anonymous tipster reported that a black male wearing a white t-shirt and blue shorts was selling illegal narcotics and guns at the corner of

**STATE v. JOHNSON**

[204 N.C. App. 259 (2010)]

Pitts and Birch Streets in the Happy Hill Garden housing community. The caller said the sales were occurring out of a blue Mitsubishi, with a license plate of WT 3456. The caller refused to provide a name and the police had no means of tracking him or her down. The officers did not know how the caller obtained his or her information.

Prior to the officers' arrival in the Happy Hill neighborhood, the anonymous tipster called back at 12:32 p.m. and stated that the suspect had just left the area, but would return shortly. Due to building construction, the Happy Hill neighborhood had only two entrance points—The Mock Street Bridge, and the Alder Street exit. Osborne and Dickerson stationed themselves near the Mock Street entrance while Navy waited near the Alder Street exit. Soon after Osborne and Dickerson parked in the Happy Hill neighborhood, they saw a blue Mitsubishi enter the neighborhood traveling westbound on Mock Street. The car's license plate was WTH 3453. It was driven by a black male wearing a white T-shirt. The officers followed the car. Osborne, who was in the passenger seat of the patrol car, entered the license plate information into his computer. It came back as registered to a Kelvin Johnson, black male, with a date of birth of 5 August 1964. The computer also informed Osborne that the registered owner's driver's license was suspended. Osborne then told Dickerson to stop the Mitsubishi, at which point Dickerson initiated a traffic stop of defendant's vehicle at the 700 block of Pitts Street, approximately 100 yards from the original area mentioned in the tip.

At the traffic stop, defendant was ordered by Dickerson to stay in the vehicle and asked if he had a driver's license, whereupon defendant answered that he did not have a license, but did have a North Carolina identification card. After learning this information, Dickerson asked defendant to get out of the car and frisked defendant for weapons. Dickerson then spoke with Navy and told him of defendant's license status. Officer Navy placed defendant under arrest for driving while license revoked. At trial, Dickerson testified that, "[w]e placed him in the back of our patrol car and then we began a search of the vehicle incident to arrest."

During the search of the vehicle, the officers found guns and ammunition. These weapons formed the basis for the weapons charges against defendant. On 9 July 2008, Judge L. Todd Burke held a hearing on defendant's motion to suppress this evidence. In denying the motion, Judge Burke held that the officers had a reasonable and articulable suspicion to stop the Mitsubishi based on the anonymous informant's tip.

On 29 September 2008, Judge Burke entered written findings of fact and conclusions of law with regard to the suppression hearing. In those findings the court stated that the officers performed the search of the vehicle incident to defendant's arrest. The court further found that the officers stopped defendant before he reached the intersection where the anonymous tipster had indicated that the illegal activity had or would occur. Finally, the court concluded that the stop was lawful under *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301 (1990).

On 24 October 2008, defendant filed a *pro se* motion to suppress with the Forsyth County Clerk. On 5 November 2008, the Honorable Judge Spivey heard defendant's motion. During his hearing, defendant stated that he lived in the neighborhood, not more than 50 yards from where he was stopped. Judge Spivey found that the motion was consumed by Judge Burke's order, and therefore did not rule on the merits of the motion.

On 13 January 2009, defendant pled guilty to one count of possession of a firearm by a felon, two counts of possession of a stolen firearm, one count of carrying a concealed gun, and one count of driving while license revoked. Also, during the sentencing phase, defendant admitted his status as an habitual felon. Defendant specifically preserved his right to appeal the denial of his motion to suppress. Defendant was sentenced to 110 to 141 months' imprisonment on the consolidated charges.

On appeal, defendant contends that (1) the trial court erred when it held, as a matter of law, that the anonymous tip possessed sufficient indicia of reliability to justify the officers' warrantless stop of defendant's car, and (2) that the warrantless search of defendant's car following his arrest for driving with a suspended license, which was conducted while he was detained in the backseat of a police car, was unconstitutional.

## II. STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress evidence, an appellate court determines whether the challenged findings of fact are supported by (1) competent evidence and (2) whether those findings support the trial court's conclusions of law. However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct. *State v. Hernandez*, 170 N.C. App. 299, 304, 612 S.E.2d 420, 423 (2005); *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]."

*In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003).

### III. ANONYMOUS TIP AS A BASIS FOR DEFENDANT'S STOP

Defendant contends that the trial court committed error by upholding the warrantless stop of his car based solely on the information provided to the police by an anonymous tipster. We conclude that, while the tip at issue included identifying details of a person and car allegedly engaged in illegal activity, it offered few details of the alleged crime, no information regarding the informant's basis of knowledge, and scant information to predict the future behavior of the alleged perpetrator. Thus, given the limited details contained in the tip, and the failure of the officers to corroborate the tip's allegations of illegal activity, the tip lacked sufficient indicia of reliability to justify the warrantless stop in this case.

Where the justification for a warrantless stop is information provided by an anonymous informant, a reviewing court must assess whether the tip at issue possessed sufficient indicia of reliability to support the police intrusion on a detainee's constitutional rights. *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983). Courts have repeatedly recognized, as a general rule, the inherent unreliability of anonymous tips standing on their own. *Alabama*, 496 U.S. at 329, 110 L. Ed. 2d at 308 ("[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity[.]"). While an anonymous tip can provide an officer with reasonable suspicion to conduct a traffic stop, it must itself possess sufficient indicia of reliability, or it must be corroborated by the officer's investigation or observations.

In *State v. Hughes*, 353 N.C. 200, 209, 539 S.E.2d 625, 632 (2000), our Supreme Court applied the anonymous tip standard articulated in *White* to the facts before it. In upholding the trial court's grant of that defendant's motion to suppress, the Court in *Hughes* found the information provided by the anonymous informant to be vague when compared to the information provided by the tipster in *White*. Crucial to the *Hughes* Court was the fact that the "information provided did not contain the 'range of details' required by *White* and *Gates* to sufficiently predict defendant's specific future action[.]" *Id.* at 208, 539 S.E.2d at 631.

Similarly, in *State v. Peele*, —— N.C. App. ——, 675 S.E.2d 682, *disc. review denied*, 363 N.C. 587, 683 S.E.2d 383 (2009), this Court reversed the trial court's denial of the defendant's motion to suppress evidence obtained following a stop of his vehicle based on informa-

tion provided by an anonymous tipster. In *Peele*, the officer received a dispatch call indicating that a burgundy Chevrolet pickup truck was headed toward the Holiday Inn intersection and was "a possible careless and reckless, D.W.I." The officer arrived at the intersection within a second and saw a truck that matched the description dispatch had provided. The officer followed the truck for approximately one-tenth of a mile and observed it weave once within its lane of travel. *Id.* at ——, 675 S.E.2d at 684-85. This Court held that, while the caller accurately described the car's physical characteristics, the caller gave police no way to test his or her credibility.

Read together, *White*, *Hughes*, and *Peele* make clear that where an anonymous tip forms the basis for a traffic stop, the tip itself must exhibit sufficient indices of reliability, or it must be "buttressed by sufficient police corroboration." *Hughes*, 353 N.C. at 207, 539 S.E.2d at 630. The type of detail provided in the tip and corroborated by the officers is critical in determining whether the tip can supply the reasonable suspicion necessary for the stop. Where the detail contained in the tip merely concerns identifying characteristics, an officer's confirmation of these details will not legitimize the tip. Regarding this point, the Court in *Hughes* stated that

[a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Hughes*, 353 N.C. at 209, 539 S.E.2d at 632 (quoting *Florida v. J.L.*, 529 U.S. 266, 272, 146 L. Ed. 2d 254, 261 (2000)).

This case is analogous to *Peele* and *Hughes*. In the present case, the anonymous caller provided identifying information concerning a black male suspect wearing a white shirt in a blue Mitsubishi with a certain license plate number. The caller alleged that this individual was selling drugs and guns at the intersection of Pitt and Birch Streets. Here, as in *Peele*, "[t]he record contains no information about who the caller was, no details about what the caller had seen, and no information even as to where the caller was located." *Peele*, —— N.C. App. at ——, 675 S.E.2d at 686. As in *Hughes*, *Peele*, and *White*, there was nothing inherent in the tip itself to allow a court to deem it reli-

able and to provide the officers with the reasonable suspicion necessary to effectuate a stop. There was also nothing observed by the officers during their brief surveillance of defendant as he drove in the neighborhood which could have provided them with reasonable suspicion to stop his car. Thus, the only way that the anonymous tip could justify defendant's detention is if the tip contained sufficient detail, corroborated by the officers, to warrant a reasonable person to believe that criminal activity was afoot. Confirmation of the single prediction that an unnamed suspect would return to the area shortly is analogous to the confirmation which was deemed insufficient in *Hughes* and *Peele. Peele,* — N.C. App. at —, 675 S.E.2d at 686 (providing that "confirmation that defendant was heading in the general direction indicated by tipster 'is simply not enough detail in an anonymous tip situation' "). *Id.* (quoting *Hughes,* 353 N.C. at 210, 539 S.E.2d at 632).

We note, however, even though the police officers did not have articulable reasonable suspicion to stop defendant's car based on the anonymous tip, the officers did lawfully stop the vehicle after discovering that the registered owner's driver's license was suspended. *See State v. Styles,* 362 N.C. 412, 416, 665 S.E.2d 438, 441 (2008) (holding that an officer may stop a vehicle upon a reasonable suspicion that the driver has committed a traffic violation); and *State v. McRae,* — N.C. App. —, —, S.E.2d —, — (filed 6 April 2010) (COA09-114) (holding that two separate grounds existed to support a finding of reasonable suspicion—the officer's observation of a traffic violation as well as an anonymous tip received by the officer). Since nothing in the anonymous tip involved a revoked driver's license, the scope of the stop should have been limited to a determination of whether defendant's driver's license was suspended. *See State v. Jackson,* — N.C. App. —, —, 681 S.E.2d 492, 496 (2009) (providing that "the scope of the detention must be carefully tailored to its underlying justification").

## IV. SEARCH INCIDENT TO DEFENDANT'S ARREST

Defendant next contends that his rights under the Fourth Amendment to the United States Constitution were violated when police searched his vehicle after his arrest for driving with a revoked driver's license. We conclude that *Gant,* — U.S. —, 173 L. Ed. 2d 485, governs in this issue. As such, we hold that the search of defendant's car was unreasonable and violated defendant's Fourth Amendment rights because the officers could not reasonably have believed that evidence of defendant's driving while license suspended

might have been found in the passenger compartment of the car, and as defendant was in the police car while the officers were conducting the search, defendant could not have accessed the passenger compartment of his car at the time of the search.

### A. Preservation for Appeal

The trial court denied defendant's motion to suppress the evidence obtained during the warrantless search of defendant's car based, in part, on the finding that the search was justified as being incident to an arrest. At the time of the suppression hearing, North Carolina law interpreting *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768 (1981) made clear that police had broad authority to search a vehicle incident to the driver's arrest. *State v. Cooper*, 304 N.C. 701, 703-05, 286 S.E.2d 102, 103-04 (1982). Accordingly, defendant did not assert the unconstitutionality of the search of his car incident to his arrest for driving with a suspended or revoked license as an alternate ground to support his motion to suppress evidence.

As a general rule, the failure to raise an alleged error in the trial court waives the right to raise it for the first time on appeal. *State v. Oliver*, 309 N.C. 326, 334, 307 S.E.2d 304, 311 (1983); N.C.R. App. P. 10(b)(1). Here, the constitutional challenge to the search of defendant's car incident to his arrest did not exist under controlling North Carolina law at the time of the hearing. On 9 July 2008, the trial court denied defendant's motion to suppress. On 13 January 2009, defendant pled guilty to the aforementioned charges and specifically preserved his right to appeal the denial of his motion to suppress. Defendant gave his notice of appeal to this Court the next day. The Supreme Court of the United States decided *Arizona v. Gant* on 21 April 2009. It is clear that *Gant* applies retroactively to this case, since this case is currently on direct review, and is not yet final. *Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649 (1987); *State v. Lucas*, 353 N.C. 568, 598, 548 S.E.2d 712, 732 (2001). Moreover, our North Carolina statutes provide that where a retroactive application of a new standard is required, errors based upon that new standard "may be the subject of appellate review even though no objection, exception or motion has been made in the trial division." N.C. Gen. Stat. § 15A-1446(d)(19) (2009).

### B. Constitutionality of the Search Incident to Arrest

The United States Supreme Court, in its decision of *Arizona v. Gant* held that:

Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.

556 U.S. at ——, 173 L. Ed. 2d at 501. In *Gant*, the arrestee was secured in the back of the police car after his arrest for a misdemeanor traffic offense at the time his car was searched. The *Gant* Court held that the search under these circumstances was unreasonable and violated Gant's Fourth Amendment rights.

The present case cannot be distinguished in any constitutionally relevant sense from *Gant*. Here, defendant was arrested for driving while his license was suspended or revoked and placed in the rear of the patrol car. At least three officers were present at the stop and arrest. After defendant was secured in the back of the patrol car, the officers began their search of his car incident to his arrest.

In *Gant*, officers knocked on the door of a house after receiving a tip that the house was being used to sell drugs. Gant answered the door, and the officers asked to speak to the owner of the house. Gant identified himself and said that he expected the owner to return later. The officers left and conducted a record check on Gant. They learned that his driver's license had been suspended and that there was an outstanding warrant to arrest him for driving with a suspended license. The officers returned to the house that night and saw Gant driving into the driveway of the house. The officers recognized him and his car. They arrested Gant for driving with a suspended license and handcuffed him when he got out of the car. After two more officers arrived in a police car, the officers locked Gant in the back of the police car, searched Gant's car, and found a bag of cocaine in a jacket on the backseat and a gun. *Id.* at ——, 173 L. Ed. 2d at 491-92.

Based on these facts, the *Gant* Court ruled that the warrantless search of Gant's car was not constitutional as a search incident to Gant's arrest, because Gant was not within reaching distance of his car at the time of the search. The Court recognized that, given the many means available to officers to "ensur[e] the safe arrest of vehicle occupants, it will be the rare case in which . . . a real possibility of access to the arrestee's vehicle remains." *Id.* at —— n.4, 173 L. Ed. 2d at 496 n.4.

The facts here cannot be distinguished in any meaningful way from *Gant* given that the three officers in this case outnumbered the one arrestee and the arrestee had been secured in a patrol car at the

time of the search. Thus, here, as in *Gant*, the arrestee "clearly was not within reaching distance of his car at the time of the search." *Id.* at ——, 173 L. Ed. 2d at 497. The Court also emphasized in *Gant* that it was not reasonable to believe that Gant's car contained evidence of the offense for which he had been arrested: "Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence [of] in the passenger compartment of Gant's car." *Id.* at ——, 173 L. Ed. 2d at 485. With regard to this point, the facts in the present case are strikingly similar to those in *Gant*, given that defendant was arrested for driving while license suspended or revoked—a motor vehicle misdemeanor for which the officers could not expect to find evidence in the passenger compartment of the car.

### C. Completeness of the Suppression Hearing Record to Decide Defendant's *Gant* Argument

Finally, with regard to this issue, we note that because defendant did not object to the search under *Gant*, the State requests that this Court remand the case back to the trial court for a new suppression hearing. We disagree.

While the suppression hearing was focused on the constitutionality of the police officer's stop of defendant, the record exceeds that scope, and covers in detail all aspects of the encounter including: the stop, the officer's questioning of defendant regarding his license, defendant's arrest for driving on a suspended or revoked license, defendant's removal to the backseat of the patrol car, and the subsequent search of defendant's car incident to his arrest.

The prosecutor's questions at the hearing were designed to elicit all information concerning the officer's stop and subsequent search of defendant's vehicle. Further, Officer Dickerson's detailed report concerning the entire incident was admitted at the hearing and is included in the record on appeal. According to the officers, defendant was arrested shortly after the stop. For instance, defendant was asked for his driver's license; defendant admitted he did not have a license; and as a result, the officers immediately arrested defendant for driving with a revoked license. After being arrested, defendant was placed in the rear of the patrol car and Sergeant Osborne searched the car. While searching, Sergeant Osborne found a handgun after he opened the door and looked under the driver's seat.

The only possible exceptions to the warrant requirement that the State could have used to justify this search or seizure would have

been probable cause to search the automobile or plain view. It is clear from the record that neither of these justifications apply. The entire basis of the officers' information that there was evidence of contraband in the car came from the anonymous informant. Because we find that the anonymous tip did not even provide the officers with reasonable suspicion to stop the car, there is no support for a finding of probable cause to search.

Moreover, the facts of this case do not support a finding that the plain view doctrine justified the seizure of the evidence. The plain view doctrine allows an officer to seize an item that is in plain view when he is in an area that he has a right to be, the character of the item as evidence or contraband is apparent, and the sighting is inadvertent. *State v. Bone*, 354 N.C. 1, 8, 550 S.E.2d 482, 487 (2001). Here, Sergeant Osborne did not see the first gun seized until he opened the driver's door and looked underneath the driver's seat. Thus, absent some other justification for the search, Sergeant Osborne did not observe the first gun from a location that he had a right to be, and the gun's discovery was not inadvertent. Accordingly, plain view does not apply and the officers' search of defendant's vehicle incident to his arrest for driving while license revoked was unreasonable under the Fourth Amendment.

## V. CONCLUSION

For the reasons stated above, we hold that defendant's motion to suppress was improperly denied. Further, given that all of the State's evidence of contraband and weapons should have been suppressed, defendant's convictions for possession of a firearm by a felon, two counts of possession of a stolen firearm, and one count of carrying a concealed weapon should be vacated. As provided above, the officers lawfully stopped defendant's vehicle for driving while license revoked, therefore, that conviction must stand. As such, the trial court's order denying defendant's motion to suppress is reversed, its judgment is partially vacated, and we remand to the trial court for sentencing as to defendant's driving while license revoked conviction.

Reversed, vacated and remanded.

Judges HUNTER, Robert C., and JACKSON concur.