IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-935

 Filed: 21 May 2019

Beaufort County, No. 16 CRS 50043

STATE OF NORTH CAROLINA

 v.

DAVID LEROY CARVER

 Appeal by defendant from judgment entered 23 April 2018 by Judge Wayland

J. Sermons, Jr. in Beaufort County Superior Court. Heard in the Court of Appeals 9

April 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Douglas
 W. Corkhill, for the State.

 Leslie S. Robinson for defendant-appellant.

 TYSON, Judge.

 David Leroy Carver (“Defendant”) appeals from an order denying his motion

to suppress. We reverse and remand.

 I. Background

 Beaufort County Sheriff’s Deputy Dominic Franks received a dispatch call,

which had originated from an anonymous tipster, a little before 11:00 p.m. on 8

January 2016. Deputy Franks was advised of a vehicle being located in a ditch on

Woodstock Road, possibly with a “drunk driver, someone intoxicated,” and that “a
 STATE V. CARVER

 Opinion of the Court

truck was attempting – getting ready to pull them out.” Deputy Franks received no

information concerning the description of the car, the truck, or the driver. There was

also no information regarding the caller or at what time the call was received.

 When Deputy Franks arrived at the rural location approximately ten minutes

later, he noticed a white Cadillac “catty-cornered” or “partially in” someone’s

driveway at an angle. The vehicle had mud on the driver’s side, and Deputy Franks

opined that from “gouges in the side of the road . . . it appeared the vehicle had ran

off the road.” Deputy Franks did not stop at the vehicle to determine ownership and

kept driving, though he testified he did not observe anyone in or around the vehicle

as he passed.

 As Deputy Franks continued driving past, he observed a truck “a couple of

hundred feet” from where the Cadillac was parked, traveling away from his location.

Deputy Franks testified he followed the truck to check its license plate. When he

caught up from behind, he estimated the truck was traveling thirty-five to forty miles

an hour, approximately fifteen to twenty miles below the posted 55 m.p.h. speed limit.

Deputy Franks testified the truck was the only truck on the highway and “it was big

enough to pull the car out.” He did not see any chains, straps, or other apparatus

that would indicate that the truck had just pulled a vehicle out of a ditch.

 Deputy Franks’ sole reason to initiate the traffic stop was “due to what was

called out from communications.” The truck promptly came to a stop on the highway.

 -2-
 STATE V. CARVER

 Opinion of the Court

The truck was being driven by a Mr. Griekspoor. Defendant was observed sitting in

the passenger seat. Deputy Franks explained to Mr. Griekspoor that there was a

report of a truck attempting to pull a vehicle out of a ditch. Mr. Griekspoor told

Deputy Franks that he had pulled Defendant’s car out of the ditch, was giving him a

ride home, and he was “trying to help out a friend.”

 Deputy Franks observed that Defendant’s legs were “covered in mud” from

“half his thighs down.” Defendant did not answer Deputy Franks’ question of why he

was so muddy. Deputy Franks’ supervisor, Corporal Sheppard, arrived upon the

scene as Deputy Franks was collecting Mr. Griekspoor’s driver’s license and

registration.

 Deputy Franks filled his supervisor in on the situation. Corporal Sheppard

went to the passenger side to talk with Defendant, a “routine practice” according to

Corporal Sheppard. Deputy Franks took Mr. Griekspoor’s documents back to his

patrol car to get information from communications on the license and registration

and found no wants or warrants outstanding. He returned Mr. Griekspoor’s

documents while Corporal Sheppard was speaking with Defendant.

 Corporal Sheppard asked Defendant to open the door and testified he noticed

“a moderate odor of alcohol” from the passenger area. Defendant exited the truck at

the officer’s request. Corporal Sheppard stated he “continue[d] smelling the alcohol

coming from [Defendant],” and observed Defendant was “unsteady on his feet.”

 -3-
 STATE V. CARVER

 Opinion of the Court

 Corporal Sheppard instructed Defendant to perform the Horizontal Gaze

Nystagmus test. Corporal Sheppard purportedly detected all of the six clues from the

test. By the time the Highway Patrol arrived to “process” Defendant ten to fifteen

minutes later, he had been detained “based on [Corporal Sheppard’s] suspicion of

DWI.” Defendant was given a Breathalyzer test by Highway Patrol Trooper Peele,

with a result of 0.08. Defendant was charged with driving while impaired.

 Defendant filed a motion to suppress evidence. The district court denied

Defendant’s motion, found him guilty of impaired driving, and sentenced him to sixty

days imprisonment, which was suspended for twelve months of unsupervised

probation. Defendant appealed to the superior court, where he filed another motion

to suppress evidence. After a hearing, the superior court entered an order denying

Defendant’s motion.

 Defendant preserved his right to appeal the denial of his motion to suppress

and entered a plea of guilty to impaired driving. The superior court sentenced

Defendant to thirty days imprisonment, which was suspended for six months of

unsupervised probation. Defendant gave oral notice of appeal.

 II. Jurisdiction

 An appeal of right lies to this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)

and 15A-1444 (2017).

 III. Issues

 -4-
 STATE V. CARVER

 Opinion of the Court

 Defendant argues the deputy’s observations of the scene and an anonymous tip

were insufficient to defeat Defendant’s motion to suppress. Defendant also argues

the trial court erred by finding (1) there were “little artificial lights” in the general

area; (2) there were gouges in the dirt shoulder of the road leading to the ditch in

close proximity to the Defendant’s car; and, (3) the deputy did not stop at the white

car because he observed a truck going in the same direction he was.

 IV. Standard of Review

 On review of a denial of a motion to suppress, this Court is limited to the

determination of “whether the trial judge’s underlying findings of fact are supported

by competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge’s ultimate conclusions of

law.” State v. Rose, 170 N.C. App. 284, 287-88, 612 S.E.2d 336, 338-39 (2005)

(citations and quotation marks omitted).

 V. Investigatory Stop

 “The Fourth Amendment protects individuals against unreasonable searches

and seizures. The North Carolina Constitution provides similar protection.” State v.

Hernandez, 208 N.C. App. 591, 597, 704 S.E.2d 55, 59 (2010) (citations and quotation

marks omitted).

 “[B]rief investigatory detentions such as those involved in the stopping of a

vehicle” are considered seizures of the person and subject to Fourth Amendment

 -5-
 STATE V. CARVER

 Opinion of the Court

protections. State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 69-70 (1994) (citation

omitted).

 The Fourth Amendment permits brief investigative
 stops . . . when a law enforcement officer has a
 particularized and objective basis for suspecting the
 particular person stopped of criminal activity. The
 reasonable suspicion necessary to justify such a stop is
 dependent upon both the content of information possessed
 by police and its degree of reliability. The standard takes
 into account the totality of the circumstances—the whole
 picture. Although a mere hunch does not create reasonable
 suspicion, the level of suspicion the standard requires is
 considerably less than proof of wrongdoing by a
 preponderance of the evidence, and obviously less than is
 necessary for probable cause.

Navarette v. California, 572 U.S. 393, 396-97, __ L. Ed. 2d __, __ (2014) (citations and

quotation marks omitted).

 “An investigatory stop must be justified by a reasonable suspicion, based on

objective facts, that the individual is involved in criminal activity. To determine

whether this reasonable suspicion exists, a court must consider the totality of the

circumstances.” State v. Kincaid, 147 N.C. App. 94, 97, 555 S.E.2d 294, 297-98 (2001)

(citations and internal quotation marks omitted). “The stop must be based on specific

and articulable facts, as well as the rational inferences from those facts, as viewed

through the eyes of a reasonable, cautious officer, guided by his experience and

training.” Id. at 98, 555 S.E.2d at 298 (quoting Watkins, 337 N.C. at 441-42, 446

S.E.2d at 70).

 -6-
 STATE V. CARVER

 Opinion of the Court

 It is well established that [a]n anonymous tip can provide
 reasonable suspicion as long as it exhibits sufficient indicia
 of reliability. Even if a tip lacks sufficient indicia of
 reliability, it may still provide a basis for reasonable
 suspicion if it is buttressed by sufficient police
 corroboration. In sum, to provide the justification for a
 warrantless stop, an anonymous tip must have sufficient
 indicia of reliability, and if it does not, then there must be
 sufficient police corroboration of the tip before the stop may
 be made.

State v. Veal, 234 N.C. App. 570, 577, 760 S.E.2d 43, 48 (2014) (internal citations and

quotation marks omitted).

 The State correctly concedes the anonymous tip in and of itself likely fails to

provide sufficient reliability to justify a stop. See Florida v. J.L., 529 U.S. 266, 270,

146 L. Ed. 2d 254, 260 (2000). The anonymous tip provided no description of either

the car or the truck or how many people were involved. There is no indication of when

the call came in or when the anonymous tipster witnessed the car in the ditch with a

truck attempting to pull it out. However, the State argues since “nearly every aspect

of the tip was corroborated by the officer,” the deputy had sufficient reasonable

suspicion to stop the truck. We disagree.

 The State asserts the facts in this case are comparable to State v. Watkins. In

Watkins, an officer was informed of a suspicious vehicle behind the Virginia Carolina

Well Drilling Company from a tip provided by an anonymous caller around 3:00 a.m.

Watkins, 337 N.C. at 442, 446 S.E.2d at 70. The officer did not know the description

of the “suspicious vehicle,” but he did know that the business was normally closed at

 -7-
 STATE V. CARVER

 Opinion of the Court

that time. Id. As he investigated, the officer saw a vehicle driving away. Id. at 440,

446 S.E.2d at 69. The officer followed, turning on his blue lights and stopping the car

“for the purpose of continuing his [suspicious vehicle] investigation and not because

of anything he observed about the defendant’s driving.” Id. at 440-41, 446 S.E.2d at

69.

 Our Supreme Court upheld the stop, holding that the officer had reasonable

suspicion. “All of the facts, and the reasonable inferences from those facts, known to

the officer when he decided to make the investigatory stop, would lead to a reasonably

cautious law enforcement officer to suspect that criminal activity was afoot.” Id. at

443, 446 S.E.2d at 70. “[C]onsidered as a whole and from the point of view of a

reasonably cautious officer on the scene, the officer had a reasonable suspicion to

detain defendant for a brief investigatory stop.” Id. at 443, 446 S.E.2d at 71.

 Unlike in Watkins, the facts and inferences drawn from these facts are

insufficient for a reasonable officer to suspect criminal activity had occurred. When

Deputy Franks passed the Cadillac and came up behind the truck, he saw no

equipment to indicate the truck had pulled, or had been able to pull, a car out of a

ditch. There were no chains or other apparatuses visible to the deputy. Deputy

Franks could not see how many people were in the truck prior to the stop. He testified

the truck was not operating in violation of the law. He believed it was a suspicious

vehicle merely because of the fact it was on the highway.

 -8-
 STATE V. CARVER

 Opinion of the Court

 Subsequent opinions from this Court are more applicable to the facts in this

case. In State v. Peele, the officer responded to a call describing a burgundy pickup

truck being driven recklessly by a possible intoxicated driver “headed towards the

Holiday Inn intersection.” 196 N.C. App. 668, 669, 675 S.E.2d 682, 684 (2009). The

officer arrived on the scene “within a second,” saw and followed a burgundy truck for

about a tenth of a mile, observed the truck “weave within his lane once,” and pulled

the truck over. Id. This Court held that the officer lacked reasonable suspicion

because “all we have is a tip with no indicia of reliability, no corroboration, and

conduct falling within the broad range of what can be described as normal driving

behavior.” Id. at 674, 675 S.E.2d at 687 (citation and quotation marks omitted).

 The Court in Peele relies on State v. McArn, where this Court found an

anonymous tip describing a specific car at a specific location was insufficient to

provide the officer with reasonable suspicion:

 [T]he fact that the anonymous tipster provided the location
 and description of the vehicle may have offered some
 limited indicia of reliability in that it assisted the police in
 identifying the vehicle the tipster referenced. It has not
 gone unnoticed by this Court, however, that the tipster
 never identified or in any way described an individual.
 Therefore, the tip upon which Officer Hall relied did not
 possess the indicia of reliability necessary to provide
 reasonable suspicion to make an investigatory stop. The
 anonymous tipster in no way predicted defendant’s actions.
 The police were thus unable to test the tipster’s knowledge
 or credibility. Moreover, the tipster failed to explain on
 what basis he knew about the white Nissan vehicle and
 related drug activity.

 -9-
 STATE V. CARVER

 Opinion of the Court

State v. McArn, 159 N.C. App. 209, 214, 582 S.E.2d 371, 375 (2003).

 In State v. Horton, a police officer received a dispatch regarding a “suspicious

white male, with a gold or silver vehicle in the parking lot” of a local business in an

area with a history of break-ins. State v. Horton, __ N.C. App. __, __, __ S.E.2d __, __,

2019 N.C. App. LEXIS 302 at *2 (2019). When the officer arrived at the location, he

exited his patrol vehicle and walked toward a silver car with a black male in the

driver’s seat, who then drove away. Id. at *2-3. The officer followed the vehicle

because he thought the man’s behavior was a little odd, but never observed “any bad

driving, traffic violations, criminal offense, or furtive movements” prior to stopping

the vehicle. Id. at *3. When the officer conducted a traffic stop, he smelled a strong

odor of marijuana and searched the vehicle. Id. at *4. The search revealed narcotics,

a scale, a stolen firearm, and cash. Id.

 This Court found the officer’s justification for the traffic stop was “nothing

more than an inchoate and unparticularized suspicion or hunch.” Id. at *11 (quoting

United States v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 7 (1989)). The anonymous

tip “reported no crime and was only partially correct,” and “it merely described the

individual as ‘suspicious’ without any indication as to why.” Id. at *15.

 The type of detail provided in the [anonymous] tip and
 corroborated by the officers is critical in determining
 whether the tip can supply the reasonable suspicion
 necessary for the stop. Where the detail contained in the
 tip merely concerns identifying characteristics, an officer’s
 confirmation of these details will not legitimize the tip.

 - 10 -
 STATE V. CARVER

 Opinion of the Court

Id. at *12 (quoting State v. Johnson, 204 N.C. App. 259, 264, 693 S.E.2d 711, 715

(2010)).

 Here, the details in the anonymous tip were not sufficient to even establish

identifying characteristics, let alone to allow Deputy Franks to corroborate the

details. See id. The anonymous tipster merely indicated a car was in a ditch, someone

was present who may be intoxicated, and a truck was preparing to pull the vehicle

out of the ditch. There was no description of the car, the truck, or any individuals

who may have been involved. After Deputy Franks passed the scene and the Cadillac

and drove into a curve, he noticed a truck ahead driving under the posted speed limit.

Deputy Franks’ testimony indicated the road was curvy and the truck “was already

in the curve” as he approached it from behind.

 Deputy Franks provided no testimony tending to show the truck was engaging

in any unsafe, reckless, or illegal driving behavior prior to his stop. He was unable

to ascertain if there was even a passenger in the truck. At best, “all we have is a tip

with no indicia of reliability, no corroboration, and conduct falling within the broad

range of what can be described as normal driving behavior.” Peele, 196 N.C. App. at

674, 675 S.E.2d at 687.

 Under the totality of the circumstances, Deputy Franks lacked reasonable

suspicion to conduct a warrantless traffic stop of Mr. Griekspoor’s truck. See Kincaid,

147 N.C. App. at 97, 555 S.E.2d at 297-98. Nothing in the anonymous tip would have

 - 11 -
 STATE V. CARVER

 Opinion of the Court

indicated this truck was the one that had pulled the car out of the ditch. The truck

was merely driving along a public highway and not committing any driving

infractions. Deputy Franks’ stop of Mr. Griekspoor was nothing more than a

warrantless search and seizure based upon a mere suspicion or a hunch. Horton, at

*12.

 The State concedes the anonymous tip, without more, was insufficient to justify

the warrantless stop. The trial court erred in concluding Deputy Franks had a

reasonable suspicion to stop the truck and in denying Defendant’s motion to suppress.

 VI. Conclusion

 The anonymous tip was insufficient to provide reasonable suspicion for Deputy

Franks to stop Mr. Griekspoor’s truck travelling on a highway. Deputy Franks did

not have reasonable suspicion to conduct this warrantless seizure and search. Based

on our determination that the trial court’s conclusion of law was error, we need not

address Defendant’s arguments concerning the trial court’s findings of fact.

 The trial court erred in denying Defendant’s motion to suppress. We reverse

and remand for entry of an order granting Defendant’s motion. It is so ordered.

 REVERSED AND REMANDED.

 Chief Judge McGEE concurs.

 Judge BERGER dissenting with separate opinion.

 - 12 -
No. COA18-935 – State v. Carver

 BERGER, Judge, dissenting.

 I respectfully dissent.

 “Reasonable suspicion is a ‘less demanding standard
 than probable cause and requires a showing considerably
 less than preponderance of the evidence.’ ” State v.
 Barnard, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (2008)
 (quoting Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct.
 673, 145 L.Ed.2d 570 (2000)). “The only requirement is a
 minimal level of objective justification, something more
 than an unparticularized suspicion or hunch.” State v.
 Otto, 366 N.C. 134, 137, 726 S.E.2d 824, 827 (2012)
 (citations and quotation marks omitted). “Moreover, a
 court must consider the totality of the circumstances—the
 whole picture in determining whether a reasonable
 suspicion exists.” Barnard, 362 N.C. at 247, 658 S.E.2d at
 645.

State v. Jones, ___ N.C. App. ___, ___, 825 S.E.2d 260, 264 (2019). The “reasonable

suspicion standard simply requires that ‘[t]he stop be based on specific and

articulable facts, as well as the rational inferences from those facts, as viewed

through the eyes of a reasonable, cautious officer, guided by his experience and

training.’ ” State v. Mangum, ___ N.C. App. ___, ___, 795 S.E.2d 106, 117 (2016)

(quoting State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)), writ denied,

review denied, 369 N.C. 536, 797 S.E.2d 8 (2017). Generally, an anonymous tip is not

sufficiently reliable to provide reasonable suspicion unless “it is buttressed by

sufficient police corroboration.” State v. Hughes, 353 N.C. 200, 207, 539 S.E.2d 625,

630 (2000).
 STATE V. CARVER

 Berger, J., dissenting

 “Reasonable suspicion is a commonsense, nontechnical conception[ ] that

deal[s] with the factual and practical considerations of everyday life on which

reasonable and prudent men, not legal technicians, act.” State v. Heien, 366 N.C. 271,

280, 737 S.E.2d 351, 357 (2012) (purgandum). “The process of [determining

reasonable suspicion] does not deal with hard certainties, but with probabilities . . . .”

United States v. Cortez, 449 U.S. 411, 418 (1981).

 In determining whether reasonable suspicion exists, “context matters: actions

that may appear innocuous at a certain time or in a certain place may very well serve

as a harbinger of criminal activity under different circumstances.” Mangum, ___ N.C.

App. at ___, 795 S.E.2d at 117 (quoting United States v. Branch, 537 F.3d 328, 336

(4th Cir. 2008). “[T]he key determination is not the innocence of an individual’s

conduct, but the degree of suspicion that attaches to particular types of noncriminal

acts.” Id. at ___, 795 S.E.2d at 118 (citation and quotation marks omitted). For

example, “driving substantially lower than the speed limit is a factor that may

contribute to a police officer’s reasonable suspicion in stopping a vehicle.” Id.

 Here, Officer Franks was dispatched to the area of Woodstock Road in Beaufort

County at approximately 11:00 p.m. on January 8, 2016. Woodstock Road is in a

remote, rural area. A concerned citizen had reported that a vehicle was in a ditch,

and “the driver was attempting to get the vehicle pulled out by a truck.” Officer

Franks arrived approximately 10 minutes after being dispatched, and he observed an

 2
 STATE V. CARVER

 Berger, J., dissenting

unoccupied Cadillac that was “catty-cornered” near a driveway. The Cadillac had

mud on the driver’s side. In addition, there were “gouges” in the road which caused

Officer Franks to believe the Cadillac had left the roadway.

 At the same time and place, Officer Franks also observed a truck

approximately 200 feet in front of him on Woodstock Road. The truck was travelling

fifteen to twenty miles per hour below the posted speed limit away from the Cadillac.

Officer Franks did not encounter any other vehicles en route to Woodstock Road, or

while he was on Woodstock Road that evening. Officer Franks pulled up behind the

truck and initiated a traffic stop.

 Standing alone, the tip from the concerned citizen was not sufficiently reliable

to justify the stop. However, the tip was “buttressed by sufficient police

corroboration.” Hughes, 353 N.C. at 207, 539 S.E.2d at 630 (citation omitted). At

approximately 11:00 p.m., Officer Franks observed “gouges” in the roadway on

Woodstock Road near the Cadillac. There was mud on the left side of the Cadillac,

suggesting that the vehicle may have been in a ditch as the caller reported. Based

upon Officer Franks’ observations, a reasonable officer could infer that the Cadillac

had left the roadway when it was being driven.

 Further, Officer Franks only encountered two vehicles on Woodstock Road that

evening. The two vehicles matched the description provided by the caller: a truck

and a vehicle that appeared to have left the roadway. There was a high probability

 3
 STATE V. CARVER

 Berger, J., dissenting

that the truck and the Cadillac off the roadway on a desolate rural road at 11:00 p.m.

were the ones referenced by the concerned caller. These were the only two vehicles

Officer Franks encountered that evening on Woodstock Road. Moreover, when he

observed the only truck on the road, that vehicle was driving away from the area at

a speed “substantially lower than the speed limit.” Mangum, ___ N.C. App. at ___,

795 S.E.2d at 118. This evidence created a sufficient degree of suspicion for Officer

Franks to stop the truck and investigate what appeared to be a single-car accident

from an impaired driving offense.

 While there are many innocent explanations for what took place on Woodstock

Road that evening, Officer Franks’ observations corroborated the information

provided by the concerned caller that a driver that may have been impaired “was

attempting to get the vehicle pulled out by a truck.” The totality of the circumstances

provided more than just a hunch that criminal activity was afoot. There was

reasonable suspicion justifying the stop.

 Because the trial court’s findings of fact were supported by competent evidence,

and those findings support the conclusions of law, I would affirm the trial court’s

order denying Defendant’s motion to suppress.

 4