NO. COA13-1407

NORTH CAROLINA COURT OF APPEALS

Filed:  1 July 2014

STATE OF NORTH CAROLINA

v.

DOUGLAS EUGENE VEAL

Buncombe County
Nos. 11 CRS 57859, 12 CRS 160


Appeal by defendant from judgment entered 6 August 2013 by Judge Alan Z. Thornburg in Buncombe County Superior Court. Heard in the Court of Appeals 23 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General David Shick, for the State.*

> *Cheshire Parker Schneider & Bryan, PLLC, by John Keating Wiles, for defendant-appellant.*

McCULLOUGH, Judge.

Douglas Eugene Veal ("defendant") appeals the order of the trial court, denying his motion to suppress evidence. For the following reasons, we affirm the order of the trial court.

## I.  Background

On 4 July 2011, Officer Rodney Cloer of the Asheville Police Department ("Officer Cloer") was dispatched to a report of an intoxicated driver in a green Chevy truck at the Citistop gas station located at 760 Haywood Road. The report of an

intoxicated person came through dispatch from an employee at the Citistop gas station. Dispatch reported that there was a very intoxicated male subject trying to leave the gas station in a green Chevy truck with a bed cover. Dispatch also identified the subject as an elderly white male in a white hat. Officer Cloer responded to the call and drove to the gas station and parked his car in the parking lot. He then observed defendant driving his green truck in the parking lot. Officer Cloer approached defendant on foot and asked to speak with him. While speaking with defendant, Officer Cloer noticed an odor of alcohol coming from defendant and observed an unopened can of beer in the truck. Defendant told Officer Cloer that he was going to a funeral in Alabama. Officer Cloer noted that defendant had slurred speech. Due to his observations, Officer Cloer asked defendant to get out of his vehicle. While attempting to get out of his truck, defendant stumbled and nearly fell and used the side of the vehicle to maintain his balance.

Officer Cloer, certified in standardized field sobriety testing, instructed defendant to perform the "Horizontal Gaze Nystagmus" test. While Officer Cloer was performing the test, Officer Cloer observed six out of the six signs indicating impairment. He also asked defendant to perform the "Walk and

Turn" test. While attempting to administer the test, defendant continued to ask questions during the instructional phase, lost his footing three times, used his arms for balance, and started the test without being asked. Due to these actions, Officer Cloer terminated the test and placed defendant under arrest for Driving While Impaired.

During the process of his arrest, defendant asked to be let go if he told Officer Cloer a location where drugs and stolen guns could be found. Officer Cloer explained that defendant was under arrest and he was not able to make any deals with defendant. Defendant was then transported to the jail where he subsequently refused to take the Intoxilyzer breath test to determine his blood alcohol level. Officer Cloer obtained a search warrant from the magistrate in order to perform a blood test on defendant. Defendant was transported to Memorial Mission Hospital where his blood was drawn in an ambulance in the parking lot.

On 3 October 2011, defendant was indicted for habitual impaired driving and operating a motor vehicle without an operator's license. On 5 March 2012, defendant was indicted on attaining habitual felon status and failure to appear on the charge of habitual impaired driving after being released. On 5 July 2013, defendant filed a motion to suppress all evidence

obtained from the alleged illegal seizure, arguing that Officer Cloer lacked reasonable articulable suspicion of criminal wrongdoing. The same day, defendant also filed a motion to suppress blood seized from defendant, and a motion to suppress evidence of statements made by defendant. On 29 July 2013, defendant filed a motion to exclude and objection to evidence of his alleged refusal of the Intoxilyzer test.

Defendant's trial came on for hearing on the 29 July 2013 criminal session of Buncombe County Superior Court. At the hearing, Aaron Wakenhut, the employee who called in the report of an intoxicated person, testified to his observations in the store. He could not remember the incident at the time of the trial, but testified by reading his witness statement aloud. In his statement he said that "the man was stumply [sic] walking, made a slight mess with hot water for his soup. Hard time talking and slurred. Took a very long time to respond." By order entered 1 August 2013, the trial court denied the motions to suppress. The order made the following pertinent findings of fact:

> 1. During the late evening hours of July the 4th, 2011, while on duty, Officer Cloer from the Asheville Police Department was dispatched to a gas station on Haywood Road to investigate an impaired person, and that he went there and that he parked his vehicle, got out, and observed the

Defendant driving a truck in the parking lot.

2. That Officer Cloer went up to the Defendant's truck, at which time it was stopped, asked if he could speak to the Defendant, then detected the odor of alcohol, and at that same time observed an unopened container of beer in the truck, and then upon observing that and smelling that and opining that the Defendant had slurred speech, he was unsteady on his feet, he had him submit to field sobriety tests.

. . . .

6. The officer did not observe the Defendant driving, except in the lot; however, he was dispatched there for the purpose of investigating the potential of that illegal activity, and that the Defendant was under the wheel of a truck that was moving and the motor was on and it was in a public vehicular area.

On 6 August 2013, defendant pled guilty to the charge of habitual driving while impaired and attaining habitual felon status, while preserving his right to appeal his motion to suppress. The charges of no operator's license and failure to appear on the charge of habitual impaired driving after being released were dismissed. Defendant was sentenced to a term of 66 to 89 months imprisonment. Defendant entered notice of appeal on 6 August 2013.

## II.  Standard of Review

Our review of a trial court's motion to suppress is

"strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Any unchallenged findings of fact are "deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004). The trial court's conclusions of law are fully reviewable *de novo* on appeal. *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). "[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (alteration in original) (internal quotation marks and citations omitted).

## III. Discussion

Defendant's sole argument on appeal is that the trial court erred when it denied his motion to suppress all evidence stemming from the initial stop because Officer Cloer made an illegal stop of defendant's vehicle. Defendant contends that the initial stop was illegal because it was not warranted by a reasonable and articulable suspicion of criminal activity.

The Fourth Amendment of the Constitution provides the right of people to be secure in their persons and protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. However, the United States Supreme Court has held that "[n]o one is protected by the Constitution against the mere approach of police officers in a public place." *State v. Brooks*, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994) (quoting *State v. Streeter*, 283 N.C. 203, 208, 195 S.E.2d 502, 506 (1973)). The Supreme Court has also held that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 428, 434, 115 L. Ed. 2d 389, 398 (1991).

Our Supreme Court held in *State v. Brooks*, 337 N.C. 132, 446 S.E.2d 579 (1994), that neither reasonable suspicion nor probable cause were required for an agent to approach the defendant and engage in conversation. In *Brooks*, the officer approached the vehicle while the defendant was sitting in the driver's seat. *Id.* at 137, 446 S.E.2d at 583. The officer shined a flashlight on the defendant and noticed an empty holster within the reach of the defendant. *Id.* The officer asked where his gun was located and the defendant responded that he was sitting on the gun. *Id.* The officer asked the defendant to "ease it out real slow" and the defendant reached under his

right thigh and handed the gun to the officer. *Id.* The defendant was allowed to exit and enter the vehicle multiple times during the interaction. Without putting the defendant under arrest, the officer asked him if he had any "dope" in the car. The defendant replied in the negative and asked if the officer would like to search the vehicle. *Brooks* at 137-38, 446 S.E.2d at 583. Upon searching the vehicle, with the defendant's help, the officer discovered a bag of cocaine and arrested the defendant for possession of cocaine and carrying a concealed weapon. *Id.* at 138, 446 S.E.2d at 583-84. The defendant filed a motion to suppress the search and seizure of drugs from his vehicle, arguing that the officer lacked probable cause. *Id.* at 136, 446 S.E.2d at 582-83. The Court found that there was no evidence that the officer "made a physical application of force or that the defendant submitted to any show of force." *Id.* at 142, 446 S.E.2d at 586. Our Supreme Court held that "[o]fficers who lawfully approach a car and look inside with a flashlight do not conduct a 'search' within the meaning of the Fourth Amendment. If, as a result, the officers see some evidence of a crime, this may establish probable cause to arrest the occupants." *Brooks* at 144, 446 S.E.2d at 587 (internal citations omitted).

In *State v. Isenhour*, 194 N.C. App. 539, 670 S.E.2d 264

(2008), officers were patrolling in a high crime area when they observed the defendant and a passenger parked in the back corner of a fast food restaurant parking lot. The officers parked the patrol car eight feet away from the defendant's vehicle and approached on foot. *Id.* at 540, 670 S.E.2d at 266. The defendant's window would not roll down so he opened the car door to speak with the officers. Due to the inconsistency between the defendant's and passenger's reason for being in the parking lot, the defendant was asked to exit his vehicle. *Id.* at 541, 670 S.E.2d at 266. The officer patted down the defendant and asked for consent to search his vehicle. The defendant consented, and while searching the vehicle, the officers found a pill bottle containing methadone pills. *Id.* This Court found that the officer did not create "any real 'psychological barriers' to defendant's leaving such as using his police siren, turning on his blue strobe lights, taking his gun out of his holster, or using threatening language." *Id.* at 544, 670 S.E.2d at 268. Our Court held that the officer's actions did not constitute a seizure of the defendant, so "no reasonable suspicion was required for [the officer] to approach defendant's car and ask him questions." *Id.*

In this case, similar to *Brooks*, there is no evidence that Officer Cloer used any physical force when approaching

defendant. Officer Cloer approached defendant's vehicle and engaged in conversation with him, as the officer did in *Brooks*. He testified that he walked up to defendant's car on foot and asked to speak with him. During that conversation, Officer Cloer observed signs of intoxication (the odor of alcohol on defendant, an unopened can of beer, and slurred speech) leading him to investigate defendant further. Similar to *Isenhour*, Officer Cloer also did not use any "psychological barriers" while initiating contact with defendant. He testified that he did not activate his blue lights and there is no evidence that he removed his gun from his holster or used a threatening tone initiating contact with defendant. Thus, as found in *Brooks* and *Isenhour*, Officer Cloer engaged in a voluntary encounter with defendant.

The test for determining whether a seizure has occurred "is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida* at 437, 115 L. Ed. 2d at 400 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 100 L. Ed. 2d 565 (1988)). In the present case, Officer Cloer pulled into the parking lot of the gas station and parked his vehicle. He testified that he

did not pull his vehicle in behind defendant's car, he did not activate his blue lights, and there is no evidence that he spoke in a threatening tone.  He further testified that he got out of his vehicle and approached defendant's truck on foot and asked to speak with defendant.  Our Supreme Court has held that these actions do not constitute a "seizure" of defendant.  *See State v. Brooks*, 337 N.C. 132, 446 S.E.2d 579 (1994).  Because defendant was not "seized" by Officer Cloer's approach and initial questioning, reasonable suspicion of criminal activity is not required.

Unlike a voluntary encounter, "[a]n investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)).  Reasonable suspicion requires that

> [t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by [the officer's] experience and training.  The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.'

*Id.* at 441-42, 446 S.E.2d at 70 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)) (quotation

marks and internal citations omitted). "The Fourth Amendment requires that police have an articulable and reasonable suspicion of criminal conduct *before* making an investigative stop of an automobile." *United States v. Arzaga*, 9 F.3d 91, 93 (10th Cir. 1993) (emphasis added).

Since we have determined that Officer Cloer's initial interaction with defendant was a voluntary encounter, his personal observations during that time may be used to determine reasonable suspicion for the subsequent investigatory stop. When he approached defendant's vehicle, Officer Cloer noticed the odor of alcohol coming from defendant and observed an unopened container of beer in defendant's truck. This Court has previously held that similar observations observed during a consensual encounter establish reasonable suspicion to further detain and investigate defendant. *State v. Veazey*, 191 N.C. App. 181, 195, 662 S.E.2d 683, 692 (2008) (stating that during the initial lawful checkpoint detention, the officer's observations of "a strong odor of alcohol in the vehicle and . . . that Defendant's eyes were red and glassy . . . provided a sufficient basis for reasonable suspicion permitting Trooper Carroll to pursue further investigation and detention of Defendant").

Officer Cloer initiated an investigatory stop when,

suspecting that defendant was impaired, he asked defendant to step out of his vehicle to further investigate.  We find that his personal observations of the odor of alcohol and an unopened container of beer made during the voluntary encounter are a sufficient basis for reasonable suspicion to support the stop.

Defendant also argues that the basis of his stop was from an anonymous tip.  The report of an impaired driver came from information given by an unnamed employee.  Since the caller was not identified by name, defendant argues that these facts constitute a stop based on an anonymous tip.

It is well established that "[a]n anonymous tip can provide reasonable suspicion as long as it exhibits sufficient indicia of reliability." *State v. Hughes*, 353 N.C. 200, 207, 539 S.E.2d 625, 630 (2000).  Even if a tip lacks sufficient indicia of reliability, it "may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration." *Id.*  "In sum, to provide the justification for a warrantless stop, an anonymous tip 'must have sufficient indicia of reliability, and if it does not, then there must be sufficient police corroboration of the tip before the stop may be made.'" *State v. Peele, Jr.*, 196 N.C. App. 668, 672, 675 S.E.2d 682, 685 (2009) (quoting *Hughes* at 207, 539 S.E.2d at 630).

In *United States v. Quarles*, 330 F.3d 650 (4th Cir. 2003), an individual called 911 and reported that the defendant was walking down Nash Street and was wanted by the U.S. Attorney's Office. The caller provided a description, including that the defendant was a black male with dreadlocks, and an accurate description of what the defendant was currently wearing. *Id.* at 652. The 911 operator asked the caller why the U.S. Attorney's office was interested in the defendant. The caller stated that he was wanted for carrying a gun and that the defendant had killed the caller's brother, but had "beat the case." *Id.* The caller was kept on the phone with the operator and continued to follow the defendant, keeping the operator updated until the caller saw officers arrive and put the defendant on the ground. *Id.* The court stated that "the caller here gave enough information to be identified later, and therefore, was not totally anonymous at any time." *Quarles* at 654. It also held that the caller "provided sufficient information to the police that he could have been held accountable for his statements." *Id.* at 656.

Similarly, in the present case, the caller was identified as an employee of the Citistop gas station where defendant's car was located. This information was sufficient to ascertain his identity when police arrived. The second officer on the scene,

Officer McCullough, was able to identify the caller as Aaron Wakenhut and obtain a statement from him. Thus, Wakenhut was "bound to have felt as though he was being held accountable for what he was saying." *Quarles* at 656. Wakenhut also gave information based off his personal observations of defendant's behavior inside the store. He testified that defendant was stumbling, made a mess with the hot water for his soup, had slurred speech, a hard time talking, and took a very long time to respond. Accordingly, the tip in this case would be a more reliable tip than a true anonymous caller case where the caller gives no identifying information.

Since we have determined defendant was not seized when Officer Cloer approached him and engaged in conversation, Officer Cloer was able to corroborate the caller's information before initiating a stop. Officer Cloer's personal observations of the odor of alcohol coming from defendant and an unopened container of beer on the passenger seat corroborated the caller's tip of an impaired person. Officer Cloer's observations during the voluntary encounter with defendant, prior to asking him to get out of his vehicle, along with the information from the caller's tip, established reasonable suspicion for the stop.

Defendant cites to *State v. Blankenship*, _ N.C. App. _, 748

S.E.2d 616 (2013), as his main source of authority for why the trial court erred. In *Blankenship,* officers received a "be-on-the-lookout" message from dispatch. A taxicab driver anonymously called 911 and reported that he observed a red Mustang convertible with a black soft top driving erratically, running over traffic cones, and continuing west on Patton Avenue. *Id.* at __, 748 S.E.2d at 617. The caller also provided the license plate, "XXT-9756". *Id.* A few minutes later, the officers spotted a red Mustang with a black soft top and an "X" in the license plate heading west on Patton Avenue. *Id.* When the officers caught up to the vehicle, it had made a turn and was approaching a security gate. *Id.* As the driver attempted to open the gate, the officers activated their blue lights and stopped the defendant. *Blankenship* at __, 748 S.E.2d at 617. At this time, the officers had not observed the "defendant violating any traffic laws or see any evidence of improper driving that would suggest impairment[.]" When one of the officers spoke to the defendant, he detected a strong odor of alcohol and asked him to perform field sobriety tests. *Id.* Based on his performance, the defendant was arrested for driving while impaired. This Court found that the officers were unable to judge the caller's "credibility and to confirm firsthand that the tip possessed sufficient indicia of reliability. Since [the

caller's] anonymous tip did not possess sufficient indicia of reliability, [the officers] did not possess reasonable, articulable suspicion to stop defendant's car." *Id.* at __, 748 S.E.2d at 620.

This case is distinguishable from *Blankenship* in two distinct ways. In *Blankenship*, the call was a true anonymous tip because the taxicab driver did not give any information that would enable the caller to be identified. His identity was only discovered because the 911 operator was able to go back and trace the phone number. *Id.* at __, 748 S.E.2d at 617. By not identifying himself, the officers could not judge the caller's credibility. "Since the officers did not have an opportunity to assess his credibility," the caller lacked sufficient indicia of reliability. *Id.* at __, 748 S.E.2d at 618. However, in this case, the caller was identified as an employee of the business where defendant was located, thus giving enough information that allowed for his identity to be ascertained at the scene and making him a more reliable tipster than the one in *Blankenship*.

In *Blankenship*, although the officers did not personally observe the defendant committing any unlawful behavior, they immediately initiated a stop by activating their blue lights as the "driver, defendant, attempted to open the gate." *Id.* at __, 748 S.E.2d at 617. The initial encounter was not voluntary

because the immediate activation of their blue lights acted as a show of authority that would make a reasonable person feel that they were not free to leave. Because it was not voluntary, reasonable suspicion was required to conduct the stop. In the case at hand, Officer Cloer did not activate his blue lights when he pulled into the parking lot and parked his car away from defendant's vehicle. He approached defendant on foot and engaged in a conversation in a voluntary encounter allowing Officer Cloer to make his own personal observations of the odor of alcohol and an unopened container of beer inside the car. Thus, unlike in *Blankenship*, Officer Cloer was able to personally observe defendant's behavior to corroborate the caller's tip prior to initiating the stop and he was able to form the necessary reasonable suspicion of criminal activity. Therefore, defendant's reliance on *Blankenship* is misplaced.

## IV. Conclusion

We conclude that the initial encounter between Officer Cloer and the defendant was a voluntary encounter and thus did not require reasonable suspicion. Accordingly, Officer Cloer's observations during the consensual encounter (the odor of alcohol and an unopened container) established reasonable suspicion to further detain and investigate the defendant. Based on the foregoing, we hold the trial court properly denied

defendant's motion to suppress all evidence stemming from the initial stop.

Affirmed.

Judges ELMORE and DAVIS concur.