IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-243

 Filed: 6 December 2016

Alamance County, No. 13 CRS 55892

STATE OF NORTH CAROLINA

 v.

JOSHUA RYAN WILSON

 Appeal by Defendant from judgment dated 24 September 2015 by Judge

Michael O’Foghludha in Alamance County Superior Court. Heard in the Court of

Appeals 23 August 2016.

 Attorney General Roy Cooper, by Associate Attorney General Marie H. Evitt, for
 the State.

 Leslie Rawls for Defendant.

 STEPHENS, Judge.

 Defendant Joshua Ryan Wilson appeals from the judgment entered on his

guilty plea for impaired driving. Wilson argues that the trial court erred by failing to

suppress evidence obtained during his seizure by a police officer. Because we conclude

Wilson was not seized under the Fourth Amendment, we find no error in the court’s

refusal to suppress the evidence obtained from the police officer’s encounter with

Wilson.
 STATE V. WILSON

 Opinion of the Court

 Factual and Procedural Background

 The evidence considered by the trial court pursuant to Wilson’s motion to

suppress tended to show the following:

 On 25 September 2013, Officer Blake Johnson of the Burlington Police

Department went to a residence at 402 Brooklyn Street to find a man who had

outstanding warrants for his arrest. Officer Johnson was acting on an anonymous tip

to the Burlington Police Department that the wanted individual would be at the

residence. Officer Johnson parked his car on Brooklyn Street across from the

residence and got out of the vehicle. He walked toward the residence.

 Officer Johnson observed a pickup truck leaving the residence at 402 Brooklyn

Street. Officer Johnson was in the road, but was not blocking it. The truck, driven by

Wilson, moved toward Officer Johnson from a cross street adjacent to the residence.

Officer Johnson waved his hands back and forth just above shoulder level to tell

Wilson to stop the vehicle. The officer’s intention was to question Wilson to see if he

knew anything about the man with the outstanding warrants. Officer Johnson had

no suspicion that Wilson was the man he was looking for nor did he observe any illegal

behavior by Wilson. Officer Johnson was in uniform, but no weapon was drawn,

neither police car was blocking the road, and the blue lights and sirens were not

activated.

 -2-
 STATE V. WILSON

 Opinion of the Court

 Wilson stopped the truck with the driver’s side window next to Officer Johnson.

Wilson was alone in the vehicle. Officer Johnson “smelled the odor of alcohol coming

from inside the vehicle” almost immediately. He asked Wilson about his alcohol

consumption. Wilson admitted that he had been drinking, but said that he could not

remember how many drinks he had consumed.

 Officer Johnson arrested Wilson for driving while subject to an impairing

substance. Wilson pled guilty in Alamance County District Court on 4 August 2015,

but appealed to the Superior Court. In Superior Court, Wilson moved to suppress the

evidence resulting from his encounter with Officer Johnson. A hearing was held on

15 September 2015 before Judge Michael O’Foghludha, who denied Wilson’s motion

to suppress. Wilson subsequently pled guilty on 24 September 2015, reserving the

right to appeal the order denying suppression of the evidence. Wilson gave notice of

appeal the same day in open court.

 Discussion

 On appeal, Wilson argues that the trial court erred in denying his motion to

suppress the evidence obtained from his encounter with Officer Johnson, because

Officer Johnson unconstitutionally seized Wilson without reasonable suspicion or

probable cause. Because the trial court’s findings of fact are supported by competent

evidence, and the findings support its conclusions of law that Wilson was not seized

 -3-
 STATE V. WILSON

 Opinion of the Court

under the Fourth Amendment, we find no error in the trial court’s refusal to suppress

the evidence obtained by Officer Johnson.

1. Standard of Review

 Our review of a trial court’s denial of a motion to suppress is “strictly limited

to determining whether the trial judge’s underlying findings of fact are supported by

competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge’s ultimate conclusions of

law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Unchallenged

findings of fact are presumed to be supported by competent evidence. See State v.

Pickard, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206 (2006) (citations omitted).

“[A]ny determination requiring the exercise of judgment or the application of legal

principles is more properly classified a conclusion of law.” In re Helms, 127 N.C. App.

505, 510, 491 S.E.2d 672, 675 (1997) (internal citations omitted). Findings of fact

which are mislabeled as conclusions of law may be re-classified by the appellate court

and subjected to the appropriate standard of review. State v. Hopper, 205 N.C. App.

175, 179, 695 S.E.2d 801, 805 (2010). “The trial court’s conclusions of law . . . are fully

reviewable on appeal.” State v. Hughes, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

 -4-
 STATE V. WILSON

 Opinion of the Court

2. No Fourth Amendment seizure

 Wilson first argues that the trial court erred in finding as fact that a reasonable

person would not have felt compelled to stop to talk to Officer Johnson. Although

labelled as a finding of fact by the trial court, “whether a reasonable person would

feel free to decline the officer[’s] request[]” requires a legal analysis, Florida v.

Bostick, 501 U.S. 429, 436, 115 L. Ed. 2d 389, 400 (1991), and the exercise of

judgment. Thus, we treat the trial court’s finding that a reasonable person would not

have felt compelled to stop as a conclusion of law. Wilson does not challenge any other

findings of fact. Therefore, the remaining findings of the trial court are presumed to

be supported by competent evidence.

 Wilson also argues that the trial court erred in concluding as a matter of law

that he was not seized under the Fourth Amendment. Whether Wilson was seized

turns on the same analysis as whether a reasonable person would have felt compelled

to stop. See id., 501 U.S. at 436, 115 L. Ed. 2d at 400. Therefore, we address these

arguments together, and hold that each conclusion is supported by the trial court’s

findings of fact.

 The Fourth Amendment to the United States Constitution guarantees to

individuals the right to be free from unreasonable searches and seizures. U.S. Const.

amend. IV. “[T]he crucial test [to determine if a person is seized] is whether, taking

into account all of the circumstances surrounding the encounter, the police conduct

 -5-
 STATE V. WILSON

 Opinion of the Court

would ‘have communicated to a reasonable person that he was not at liberty to ignore

the police presence and go about his business.’ ” Id., 501 U.S. at 437, 115 L. Ed. 2d at

400 (quoting Michigan v. Chesternut, 486 U.S. 567, 569, 100 L. Ed. 2d 565, 569

(1988)).

 Wilson cites Bostick for the rule that a person is seized when his freedom of

movement is terminated or restrained “by means of physical force or show of

authority.” 501 U.S. at 434, 115 L. Ed. 2d at 398 (quoting Terry v. Ohio, 392 U.S. 1,

19 n.16, 20 L. Ed. 2d 889, 905 n. 16 (1968)). However, Wilson omits the context in

which the Court made this statement. The Court cited Terry while making the point

that a “seizure does not occur simply because a police officer approaches an individual

and asks a few questions.” Id. Rather, as the Court stated in Terry, a seizure occurs

“[o]nly when the officer, by means of physical force or show of authority, has in some

way restrained the liberty of a citizen.” Id. (quoting Terry, 392 U.S. at 19 n.16, 20 L.

Ed. 2d at 905 n.16) (emphasis added).

 In Bostick, two police officers with visible badges boarded a bus and questioned

the defendant “without articulable suspicion.” Id. at 431, 115 L. Ed. 2d at 396. One

officer carried a gun in a zipper pouch, but never brandished the weapon. Id. at 432,

115 L. Ed. 2d at 397. The officers asked the defendant for consent to search his

luggage, which was given. Id. at 432, 115 L. Ed. 2d at 396-97. The defendant argued

that he was unconstitutionally seized by the officers on the bus because he did not

 -6-
 STATE V. WILSON

 Opinion of the Court

feel free to leave the encounter. Id. at 435, 115 L. Ed. 2d at 399. The Court reasoned

that the restriction of the defendant’s movements happened not because of the police,

but because he chose to get on a bus. Id. at 436, 115 L. Ed. 2d at 399. This restriction,

therefore, and the defendant’s feeling that he could not leave the bus, did not

necessarily render the encounter non-consensual. Id. The Court ultimately remanded

the case to the Florida Supreme Court to analyze the voluntariness of the encounter

based on the totality of the circumstances. Id. at 439-40, 115 L. Ed. 2d at 402.

 Wilson also cites United States v. Mendenhall for the reasonable person test

adopted by the Supreme Court in which a person is seized “only if, in view of all the

circumstances surrounding the incident, a reasonable person would have believed

that he was not free to leave.” 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509 (1980).

However, immediately after that holding, the Supreme Court explained:

 Examples of circumstances that might indicate a seizure,
 even where the person did not attempt to leave, would be
 the threatening presence of several officers, the display of
 a weapon by an officer, some physical touching of the
 person of the citizen, or the use of language or tone of voice
 indicating that compliance with the officer’s request might
 be compelled. In the absence of some such evidence,
 otherwise inoffensive contact between a member of the
 public and the police cannot, as a matter of law, amount to
 a seizure of that person.

Id. at 554-55, 64 L. Ed. 2d at 509 (internal citations omitted).

 Finally, Wilson cites Chesternut for the proposition that Officer Johnson’s hand

motions were tantamount to a command to stop, and were thus a display of authority

 -7-
 STATE V. WILSON

 Opinion of the Court

resulting in Wilson’s seizure. Wilson mischaracterizes the holding of the Supreme

Court. In Chesternut, the Supreme Court held that the defendant was not seized

when police officers in a marked car followed him as he ran away from the car. 486

U.S. at 574-75, 100 L. Ed. 2d at 572-73. Rather than list behaviors that would

constitute a seizure, in analyzing whether a reasonable person would have

interpreted the police conduct as an attempt to restrict his movement, the Court

stated, “The record does not reflect that the police activated a siren or flashers; or

that they commanded respondent to halt, or displayed any weapons; or that they

operated the car in an aggressive manner to block respondent's course or otherwise

control the direction or speed of his movement.” Id. at 575, 100 L. Ed. 2d at 573. The

Court did not indicate that any one of these behaviors would constitute an

authoritative display resulting in a Fourth Amendment seizure. To the contrary, the

Court applied the test enumerated in Mendenhall, which requires evaluation of all

the facts and circumstances surrounding the encounter. Id. at 573, 100 L. Ed. 2d at

571-72. In doing so, it concluded that the “presence of a police car driving parallel to

a running pedestrian,” while intimidating, was not sufficient on its own to constitute

a seizure. Id. at 575, 100 L. Ed. 2d at 573.

 Unlike the officers in Bostick, Officer Johnson did not approach Wilson in a

confined space nor did Wilson see his weapon. Wilson’s movement was not restricted

the way a passenger on a bus would be restricted with a police officer standing above

 -8-
 STATE V. WILSON

 Opinion of the Court

him. To the contrary, the fact that Wilson was in a truck while Officer Johnson was

on foot and not blocking the road indicates that Wilson’s movement was not

restricted. Wilson’s encounter was thus more voluntary than that of the defendant in

Bostick, whose encounter on the bus was held to be consensual. Bostick v. State, 593

So. 2d 494, 495 (Fla. 1992) (per curiam), on remand from 501 U.S. 429, 115 L. Ed. 2d

389.

 Further, none of the examples illustrated by the Court in Mendenhall of

circumstances indicating a seizure are present in this case. The trial court found that

Officer Johnson was alone on the scene, he did not draw his weapon, and his lights

and sirens were off. The officer also did not touch Wilson or use any language or tone

which would indicate that compliance with his request would be compelled.

 The facts of this case are more similar to those in Chesternut, where there was

no evidence that the officers used lights and sirens, displayed a weapon, or blocked

the defendant’s movement with the patrol car. While Wilson argues that Officer

Johnson’s arm motions were tantamount to a command to stop, the motions occurred

without any other display of police authority, such as lights, sirens, or a weapon, and

while Wilson had the ability to continue driving on the road in front of him. Despite

Wilson’s argument that Officer Johnson at least partially blocked the road, the trial

court made no finding that the road was blocked. To the contrary, the court found

that “[t]here was no roadblock in place, and Officer Johnson’s patrol car was not

 -9-
 STATE V. WILSON

 Opinion of the Court

blocking traffic.” Further, the presence of a single police officer waving his hands in

the road is a less authoritative display than a patrol car driving parallel to a

pedestrian, which was held insufficient to constitute a seizure.

 Wilson argues that his case is distinguishable from North Carolina precedent

based on the fact that Officer Johnson signaled to Wilson to stop rather than

approaching the moving vehicle. Citing two cases, State v. Farmer, 333 N.C. 172, 424

S.E.2d 120 (1993), and State v. Veal, 234 N.C. App. 570, 760 S.E.2d 43 (2014), Wilson

argues that Officer’s Johnson’s motions were a “directive” and a “summons” rather

than a request.

 In Farmer, two police officers in a car passed the defendant, who was walking

on the side of the road. 333 N.C. at 180, 424 S.E.2d at 125. Because he matched the

description of the person they were on their way to question, the officers backed up

their car and parked about twenty feet in front of the defendant. Id. at 180, 424 S.E.2d

at 125. The officers exited their vehicle and approached the defendant to question

him. Id. After some questioning, the officers decided to call the local sheriff’s

department, and asked the defendant if he would wait in the police car. Id. at 182,

424 S.E.2d at 126. One officer opened the door for the defendant, who entered the

vehicle without being touched. Id. The door to the vehicle was left open. Id. at 182-

83, 424 S.E.2d at 126. While the defendant was in the vehicle, the officer asked him

for biographical information and subsequently why he had lied about his name. Id.

 - 10 -
 STATE V. WILSON

 Opinion of the Court

at 183, 424 S.E.2d at 127. The defendant argued that he was unconstitutionally

seized during the conversations on the street and in the car. Id. at 179, 424 S.E.2d at

124. While the North Carolina Supreme Court noted that one of the factors in its

voluntariness analysis was that the officers approached the defendant rather than

summoning him, the Court analyzed the totality of the circumstances, as dictated by

the test set out in Mendenhall. Id. at 187-88, 424 S.E.2d at 129. The other factors the

Court noted were that the encounter was on a public street, the officers did not wear

uniforms or display weapons, and they requested but did not demand information.

Id. at 188, 424 S.E.2d at 129. Based on all of these factors, the Court held that the

defendant was not seized either during the initial questioning on the street or during

questioning in the police vehicle, because he had no objective reason to believe he was

not free to leave. Id. at 188, 424 S.E.2d at 129-30. Nothing in the Court’s analysis

indicates that a request for the defendant to stop and speak with the officers would

be a determinative factor indicating a seizure. Further, Officer Johnson’s hand

motions were a less authoritative display than questioning a defendant inside of a

police vehicle.

 In Veal, an officer parked his car in a gas station parking lot and approached

the defendant’s stopped vehicle on foot. 234 N.C. App. at 571-72, 760 S.E.2d at 44.

The officer asked to speak with the defendant. Id. at 571, 760 S.E.2d at 44. During

the conversation, the officer smelled alcohol and noticed signs of intoxication. Id. The

 - 11 -
 STATE V. WILSON

 Opinion of the Court

officer proceeded to have the defendant perform sobriety tests, and then placed him

under arrest for driving while impaired. Id. The defendant argued that he was

unconstitutionally seized when the officer questioned him at his vehicle. Id. at 573,

760 S.E.2d at 46. Applying the totality of the circumstances test as set forth in

Chesternut and applied in Bostick, this Court held that the defendant was not seized.

Id. at 575-76, 760 S.E.2d at 47. In reaching this conclusion, the Court noted that the

officer did not park behind the defendant’s car, activate his blue lights, or speak in a

threatening tone. Id. at 575, 760 S.E.2d at 47. The Court did not consider the factor

of approaching the vehicle as opposed to any other method of initiating conversation.

However, all of the factors that the court did take into account in holding that the

defendant was not seized are present in this case.

 Finally, Wilson argues that he was compelled to stop by North Carolina traffic

law, which obligated him to “comply with any lawful order or direction of any law-

enforcement officer or traffic-control officer . . . which order or direction related to the

control of traffic.” N.C. Gen. Stat. § 20-114.1(a) (2015). We disagree. Officer Johnson’s

hand motion was not related to the control of traffic nor were there any circumstances

which would indicate to a reasonable person that Officer Johnson was acting as a

traffic control officer. The trial court found that there was no roadblock and no blue

lights were activated. Further, there was no evidence of any cones, construction, a

visible accident, or any other indication that Officer’s Johnson’s motions were “related

 - 12 -
 STATE V. WILSON

 Opinion of the Court

to the control of traffic.” Thus, this is not a factor which would indicate to a reasonable

person that he was not free to leave the encounter.

 Considering the totality of the circumstances, Officer Johnson’s hand motions

were not so authoritative or coercive that a reasonable person would not have felt free

to leave. This holding is in line with established North Carolina precedent in cases in

which no lights or sirens were used, no weapon was brandished, no language or

behavior was used indicating compliance was mandatory, and the defendant’s

movement was not blocked. See Veal, 234 N.C. App. at 575, 760 S.E.2d at 47; State v.

Williams, 201 N.C. App. 566, 571-72, 686 S.E.2d 905, 909 (holding that the defendant

was not seized when an officer parked his vehicle across the street without blocking

the defendant’s egress, did not brandish a weapon, did not activate the blue lights or

sirens, questioned the defendant, and asked for consent to search the vehicle without

using any language or behavior that would indicate the defendant was not free to

leave), disc. review denied, 363 N.C. 859, 695 S.E.2d 450 (2009); State v. Isenhour,

194 N.C. App. 539, 544, 670 S.E.2d 264, 268 (2008) (holding that the defendant was

not seized when two uniformed officers parked their marked car eight feet from the

defendant’s vehicle, approached the vehicle and questioned the defendant, but did

not block the defendant from leaving, use threatening language, brandish a weapon,

or turn on the lights or sirens). The trial court’s findings therefore support its

conclusions of law that Wilson was not seized under the Fourth Amendment and that

 - 13 -
 STATE V. WILSON

 Opinion of the Court

a reasonable person would have believed he was free to leave when Officer Johnson

waved his arms to signal Wilson to stop. The order of the trial court is

 AFFIRMED.

 Judge BRYANT concurs.

 Judge DILLON dissents by separate opinion.

 - 14 -
 No. COA16-243 – STATE v. WILSON

 DILLON, Judge, dissenting.

 I believe that Defendant’s encounter with the police officer was a Fourth

Amendment seizure. However, I believe that the matter should be remanded for more

findings on the issue of whether the seizure was constitutionally reasonable.

Therefore, my vote is to vacate the order denying Plaintiff’s motion to suppress and

to remand the matter to the trial court for additional findings regarding the

reasonableness of the seizure, in order to balance the public interest served by the

stop with Defendant’s right to be free from arbitrary interference by law enforcement

officers. Brown v. Texas, 443 U.S. 47, 50 (1979).

 A. The encounter was a seizure.

 The trial court found as follows: A uniformed police officer arrived in a

neighborhood in his marked patrol car to serve arrest warrants on the occupant of a

particular house. While the officer was standing outside his car near the house, he

saw Defendant approaching in a vehicle, whereupon he waved both of his arms above

his head, gesturing Defendant to stop his vehicle. The officer’s reason for stopping

Defendant was to gather “intel” about the house and the person named in the arrest

warrants from someone he thought might live nearby. However, once Defendant

stopped his vehicle, the officer detected an odor of alcohol on Defendant’s breath.

 I believe that this encounter was a Fourth Amendment seizure. A seizure

occurs where police conduct would “‘have communicated to a reasonable person that

he was not at liberty to ignore the police presence and go about his business.’” Florida
 STATE V. WILSON

 DILLON, J., dissenting

v. Bostick, 501 U.S. 429, 436 (1991) (quoting Michigan v. Chesternut, 486 U.S. 567,

569 (1988)). And here, I believe that any reasonable motorist in Defendant’s position

– seeing a uniformed officer standing next to a marked patrol car waving his arms,

gesturing to the motorist to stop – would feel compelled to stop, as Defendant did

here. The subjective intent of the officer is irrelevant in this analysis. State v. Davis,

305 N.C. 400, 410, 290 S.E.2d 574, 581 (1982) (holding that the determination is

based on “an objective test”).1

 Further, the seizure had not ended by the time the officer had detected the

odor of alcohol. That is, nothing had occurred that would have lead a reasonable

motorist in Defendant’s position to believe that he was no longer compelled to

remain.2 Rather, as soon as Defendant stopped and before any meaningful

communication had occurred, the officer smelled alcohol coming from inside

Defendant’s truck, leading to the charge for which Defendant was convicted. If, for

example, prior to detecting the odor of alcohol, the officer had told Defendant that he

had merely stopped Defendant to ask some questions about the neighborhood, then

 1 Indeed, our law requires a motorist to comply with any lawful direction from an officer related
to traffic control. N.C. Gen. Stat. § 20-114.1(a). In the present case, there is no finding to indicate
that a reasonable motorist in Defendant’s position would know that the officer’s hand gestures were
merely intended as a request, rather than a command, to stop or whether the officer was gesturing for
the purpose of controlling traffic.
 2 A seizure ends when a detainee would no longer feel obligated to remain. By way of example,

our Court and the Fourth Circuit Court of Appeals have held that “[g]enerally, an initial traffic stop
concludes and the encounter becomes consensual [] after an officer returns the detainee’s driver’s
license and registration.” State v. Jackson, 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009). See
also United States v. Whitney, 391 F. App’x. 277, 280-81 (4th Cir. 2010) (unpublished).

 2
 STATE V. WILSON

 DILLON, J., dissenting

perhaps the seizure became a consensual encounter. Thus any subsequent detection

of alcohol by the officer likely would have been admissible. But the findings do not

suggest that the seizure had transformed into a consensual encounter at the time the

officer detected the odor of alcohol. Therefore, I conclude, at that time, Defendant

was still subject to a Fourth Amendment seizure.

 B. Whether the seizure was reasonable requires more findings.

 The fact that the officer had no reasonable suspicion that Defendant was

involved in criminal activity does not necessarily mean that the seizure was

unconstitutional. The United States Supreme Court has held that, in some

circumstances, an officer may conduct an “information stop” of a random passing

motorist as part of an investigation of the area. See Illinois v. Lidster, 540 U.S. 419,

426-27 (2004) (holding that a checkpoint set up to ask passing motorists about a

killing which occurred on the same street was reasonable). The Court recognized in

Lidster that a “[highway] stop [which] lack[s] individualized suspicion cannot by itself

determine the constitutional outcome. . . . [S]pecial law enforcement concerns will

sometimes justify highway stops without individualized suspicion.” Id. at 424. The

Court instructed that the reasonableness of such stops must be judged “on the basis

of individual circumstances,” and that in judging the circumstances, courts must

“look to ‘the gravity of the public concerns served by the seizure, the degree to which

the seizure advances the public interest, and the severity of the interference with

 3
 STATE V. WILSON

 DILLON, J., dissenting

individual liberty.’” Id. at 426-27 (quoting Brown, 443 U.S. at 50); see also State v.

Woldt, 293 Neb. 265, 271, 876 N.W.2d 891, 896 (2016) (citing state and federal cases

from around the country which have applied Lidster to non-checkpoint stop cases).

 Here, the trial court made a number of findings concerning the officer’s reasons

for stopping Defendant. However, I believe that the matter needs to be remanded to

allow the trial court to make additional findings concerning the reasonableness of the

stop, giving consideration to the guidance provided in Lidster. Certainly, the safety

of our law enforcement officers is a matter of grave public concern. So too is the

proper and timely execution of arrest warrants. And the officer’s stop of Defendant

in this case might advance these public interests. The trial court needs to make

additional findings to balance these public interests against Defendant’s

constitutionally protected interests. For example, it might be appropriate for the trial

court to consider whether the officer was serving arrest warrants on someone who

had committed a violent crime or on someone who merely failed to appear in court for

a traffic ticket. Further, it might be appropriate for the trial court to consider the

importance of the information the officer was seeking to obtain and the circumstances

which led the officer to believe that Defendant might have such information.

 Accordingly, my vote is to vacate the trial court’s order and remand the matter

for more findings concerning the reasonableness of the seizure.

 4