IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1404

 Filed: 20 November 2018

Wake County, No. 16 CRS 210115

STATE OF NORTH CAROLINA

 v.

BARBARA JEAN MYERS MCNEIL

 Appeal by defendant from judgment entered 17 August 2017 by Judge Elaine

M. O’Neal in Wake County Superior Court. Heard in the Court of Appeals 5

September 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Christine
 Wright, for the State.

 Morgan & Carter PLLC, by Michelle F. Lynch, for defendant-appellant.

 ZACHARY, Judge.

 Defendant Barbara Jean Myers McNeil argues that the superior court erred in

denying her Motion to Suppress the evidence of her Driving While Impaired offense

because it was obtained as a result of an officer’s unlawful extension of the initial

traffic stop, in violation of the Fourth Amendment. Because the record is devoid of

the initial Driving While Impaired judgment in the district court and the notice of

appeal to the superior court, the record fails to establish that the superior court had

jurisdiction in the instant case. Nevertheless, we elect to treat Defendant’s appeal as

a petition for writ of certiorari, and affirm.
 STATE V. MYERS MCNEIL

 Opinion of the Court

 Background

 On 18 May 2016, Officer Shaun Henry and Officer Lane of the Raleigh Police

Department were on duty “in a stationary position in a marked patrol vehicle”

running license tags of vehicles that passed. At one point, a vehicle drove past the

officers and when they ran the vehicle’s tag information through the DCI program,

they learned that the registered owner of the vehicle was a male with a suspended

license. The officers then stopped the vehicle based on their suspicion that it was

being driven without a valid license. Officer Henry stated that he only intended to

“[i]dentify the driver of the vehicle to see first if the owner was in the car, if they were

driving, who the driver of the vehicle was.”

 As Officer Henry approached the vehicle, he “immediately” saw that

Defendant, a female, was in the driver’s seat and that there was a female passenger

next to her. When Officer Henry reached the driver’s window, Defendant did “not

acknowledge [his] presence” or roll the window down, but was instead “fumbling

through what appeared to be a wallet or a small clutch.” Officer Henry testified that

“[i]ndicators of impaired driving are inability to locate information pertinent to a

traffic stop, looking through a wallet, passing over her driver’s license or using—

producing a debit card or credit card in place of a driver’s license.” Officer Henry

“tapped on the window and asked if [Defendant] could roll the window down.”

 -2-
 STATE V. MYERS MCNEIL

 Opinion of the Court

 Defendant eventually rolled her window down, but only about two inches.

Officer Henry testified that “it’s kind of a red flag if a window is rolled down very

minimally to the point where either words cannot be exchanged, you can barely hear

what anyone is saying, or that someone is attempting to mask an odor coming from

the vehicle.” Officer Henry testified that he

 asked [Defendant] if she could roll [the window] down all
 the way. She stated she could hear me just fine. I
 introduced myself[.] I explained to her that the registered
 owner of the vehicle did have a suspended driver’s license.
 And she admitted that the car was not hers and made
 reference to it being . . . her husband’s and [that] she gets
 pulled over all the time for that same reason.

Officer Henry then asked Defendant “if she had her driver’s license on her[,]” to which

Defendant replied that she did. However, Officer Henry noticed that Defendant “kept

fumbling through the same amount of cards over and over again inside that small

wallet, mumbling that she did have a license and it was active.”

 In addition, Officer Henry “had to get inside th[e] [two inch window] crack in

order to hear [Defendant] talking because she was looking down and mumbling down

into, I guess, her lap where she was—so I could barely hear what she was saying.” In

doing so, he “began to observe the odor of alcohol coming from the vehicle” as well as

“[a] slight slur to her speech.” At that point, Officer Henry testified that his

investigation changed “from a Chapter 20, or driving, to an impaired driving

investigation based on that odor of alcohol and the slurred speech.”

 -3-
 STATE V. MYERS MCNEIL

 Opinion of the Court

 When Officer Henry confronted Defendant about the smell of alcohol, “her

passenger interjected stating that she was drinking the alcohol and that was what I

smelled.” He asked Defendant to roll the window all the way down so that he could

hear her. Defendant “muttered something else under her breath” and Officer Henry

asked her to step out of the vehicle. Officer Henry instructed Defendant to exit the

vehicle in order “to separate her from the odor of alcohol her passenger had admitted

to consuming. I wanted to see if having her step out would separate her from that

odor that I was detecting.” Defendant was then subjected to sobriety tests and

subsequently charged with Driving While Impaired. Dash-cam video shows that

roughly two minutes and forty-six seconds had passed between the time Officer

Henry initially approached the vehicle and the time that he asked Defendant to exit

the vehicle.

 Defendant filed a Motion to Suppress the evidence of the Driving While

Impaired offense on the grounds that Officer Henry had unlawfully extended her

roadside detention in violation of the Fourth Amendment. At the hearing, Defendant

argued that Officer Henry was required to cease his investigation once he saw that

the driver of the vehicle was Defendant—a woman—in that the sole “purpose for the

stop [was] to address a male driver with a revoked license.” The State countered that

Officer Henry developed “reasonable articulable suspicion” to believe that Defendant

 -4-
 STATE V. MYERS MCNEIL

 Opinion of the Court

was intoxicated during the initial stop, and that he was therefore permitted to extend

the stop in order to investigate that suspicion.

 The trial court orally denied Defendant’s Motion to Suppress from the bench

without making specific findings on the matter, or entering a written order.

Defendant properly renewed her Fourth Amendment objection at the time the

evidence was presented at trial, which the trial court again overruled. The jury

thereafter found Defendant guilty of Driving While Impaired. Defendant timely

appealed.

 On appeal, Defendant argues that the trial court erred in denying her Motion

to Suppress because “[o]nce the underlying reason for the stop of [Defendant] had

been satisfied, the stop should not have been prolonged and became unlawful at that

point.” Accordingly, Defendant maintains that “all evidence obtained after that point

should have been suppressed.” We disagree.

 Jurisdiction

 We initially address whether this Court has jurisdiction over Defendant’s

appeal from the superior court’s judgment of misdemeanor Driving While Impaired.

 “The superior court has no jurisdiction to try a defendant on a warrant for a

misdemeanor charge unless [she] is first tried, convicted and sentenced in district

court and then appeals that judgment for a trial de novo in superior court.” State v.

Felmet, 302 N.C. 173, 175, 273 S.E.2d 708, 710 (1981) (citing State v. Hall, 240 N.C.

 -5-
 STATE V. MYERS MCNEIL

 Opinion of the Court

109, 81 S.E.2d 189 (1954)). In the event that “the record is silent and the appellate

court is unable to determine whether the [superior court] had jurisdiction, the appeal

should be dismissed.” Id. at 176, 273 S.E.2d at 711 (citing State v. Hunter, 245 N.C.

607, 96 S.E.2d 840 (1957); State v. Banks, 241 N.C. 572, 86 S.E.2d 76 (1955); and

State v. Patterson, 222 N.C. 179, 22 S.E.2d 267 (1942)).

 In the instant case, the district court’s Driving While Impaired judgment, if

there was one, is not included in the record on appeal. Nor is there any record of notice

of appeal from the district court to the superior court. Therefore, the record is silent

as to whether Defendant was indeed first convicted in district court and thereafter

properly appealed that judgment to superior court. We are thus unable to determine

whether the superior court had jurisdiction when it entered judgment against

Defendant. See Felmet, 302 N.C. at 176, 273 S.E.2d at 711; State v. Phillips, 149

N.C. App. 310, 313-14, 560 S.E.2d 852, 855, appeal dismissed, 355 N.C. 499, 564

S.E.2d 230 (2002).

 Nevertheless, this Court has the option “to exercise our discretion to treat

[D]efendant’s appeal as a petition for certiorari” in order to reach the merits of her

arguments. Phillips, 149 N.C. App. at 314, 560 S.E.2d at 855 (citing N.C. Gen. Stat.

§ 7A-32(c) (additional citations omitted)). In the instant case, while the district

court’s judgment and the notice of appeal to the superior court therefrom are not

included in the record on appeal, we note that a district court proceeding is in fact

 -6-
 STATE V. MYERS MCNEIL

 Opinion of the Court

alluded to in the record. The district court’s order indicates that Defendant was found

guilty of Driving While Impaired, but references an unattached “DWI judgment,”

which is not included in the record. Moreover, the State has not disputed that the

superior court had jurisdiction in the instant case. Under these circumstances, we

elect to treat Defendant’s appeal as a petition for certiorari, and grant the same. See

id.

 Merits of Defendant’s Appeal

I. Standard of Review

 Our review of a trial court’s order denying a defendant’s motion to suppress “is

strictly limited to determining whether the trial judge’s underlying findings of fact

are supported by competent evidence, in which event they are conclusively binding

on appeal, and whether those factual findings in turn support the judge’s ultimate

conclusions of law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)

(citations omitted). Whether those facts are sufficient to support the conclusion that

an “officer had reasonable suspicion to detain a defendant is reviewable de novo.”

State v. Kincaid, 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001) (citing State v.

Munoz, 141 N.C. App. 675, 682, 541 S.E.2d 218, 222, cert. denied, 353 N.C. 454, 548

S.E.2d 534 (2001)). However, where the trial court has not made findings of fact, “[i]f

there is no conflict in the evidence on a fact, failure to find that fact is not error.”

State v. Smith, 135 N.C. App. 377, 380, 520 S.E.2d 310, 312 (1999). “A finding may

 -7-
 STATE V. MYERS MCNEIL

 Opinion of the Court

be implied by the trial court’s denial of [a] defendant’s motion to suppress where the

evidence is uncontradicted.” Id. (citing State v. Cobb, 295 N.C. 1, 18-19, 243 S.E.2d

759, 769 (1978)).

II. Discussion

 The Fourth Amendment to the United States Constitution requires that an

officer’s “investigatory stop must be justified by ‘a reasonable suspicion, based on

objective facts, that the individual is involved in criminal activity.’ ” State v. Watkins,

337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting Brown v. Texas, 443 U.S. 47, 51,

61 L. Ed. 2d 357, 362 (1979)). The reasonable suspicion standard requires that “an

officer simply must ‘reasonably conclude in light of his experience that criminal

activity may be afoot.’ The officer ‘must be able to point to specific and articulable

facts,’ and to ‘rational inferences from those facts,’ that justify the . . . seizure.” State

v. Bullock, ___ N.C. ___, ___, 805 S.E.2d 671, 674 (2017) (quoting Terry v. Ohio, 392

U.S. 1, 30, 21, 20 L. Ed. 2d 889, 911, 906 (1968)) (ellipses omitted). We have held that

“when a police officer becomes aware that a vehicle being operated is registered to an

owner with a suspended or revoked driver’s license, and there is no evidence

appearing to the officer that the owner is not the individual driving the automobile,

reasonable suspicion exists to warrant an investigatory stop.” State v. Hess, 185 N.C.

App. 530, 534, 648 S.E.2d 913, 917 (2007).

 -8-
 STATE V. MYERS MCNEIL

 Opinion of the Court

 That a traffic stop is justified at its inception, however, does not afford the

officer an unrestrained encounter with the individual. It is well established that “the

duration of a traffic stop must be limited to the length of time that is reasonably

necessary to accomplish the mission of the stop[.]” Bullock, ___ N.C. at ___, 805

S.E.2d at 673 (citing Rodriguez v. United States, 575 U.S. ___, ___, 191 L. Ed. 2d 492,

499 (2015)). “Because addressing the infraction is the purpose of the stop, it may last

no longer than is necessary to effectuate that purpose.” Rodriguez, 575 U.S. at ___,

191 L. Ed. 2d at 498 (citations, quotation marks, and alteration omitted). “Authority

for [a] seizure thus ends when tasks tied to the traffic infraction are—or reasonably

should have been—completed.” Id. at ___, 191 L. Ed. 2d at 498 (citation omitted).

 Nevertheless, it is entirely permissible for an officer to “conduct certain

unrelated checks during an otherwise lawful traffic stop” so long as the “unrelated

investigations” do not prolong “the time reasonably required to complete the mission”

of the stop. Id. at ___, 191 L. Ed. 2d at 499 (brackets omitted). Otherwise, the only

event in which an officer will be permitted to prolong his detention of an individual

is where “reasonable suspicion of another crime arose before that mission was

completed[.]” Bullock, ___ N.C. at ___, 805 S.E.2d at 673 (citing Rodriguez, 575 U.S.

at ___, 191 L. Ed. 2d at 499).

 In the instant case, Defendant argues that “[w]hile the officers might have had

reasonable suspicion when they stopped the vehicle [D]efendant was driving, the

 -9-
 STATE V. MYERS MCNEIL

 Opinion of the Court

traffic stop became unlawful when it was verified that the male owner was not driving

the vehicle.” We disagree.

 We first note that Defendant’s argument is based upon a basic erroneous

assumption: that a police officer can discern the gender of a driver from a distance

based simply upon outward appearance. Not all men wear stereotypical “male”

hairstyles nor do they all wear “male” clothing. The driver’s license includes a

physical description of the driver, including “sex.” Until Officer Henry had seen

Defendant’s driver’s license, he had not confirmed that the person driving the car was

female and not its owner. While he was waiting for her to find her license, he noticed

her difficulty with her wallet, the odor of alcohol, and her slurred speech.

 In any event, the time needed to complete an officer’s mission will always

include time for the “ ‘ordinary inquiries incident to the traffic stop.’ ” Id. at ___, 805

S.E.2d at 673 (quoting Rodriguez, 575 U.S. at ___, 191 L. Ed. 2d at 499 (brackets,

citation, and internal quotation marks omitted)). Such ordinary “inquiries include

‘checking the driver’s license, determining whether there are outstanding warrants

against the driver, and inspecting the automobile’s registration and proof of

insurance.’ ” Id. at ___, 805 S.E.2d at 673 (quoting Rodriguez, 575 U.S. at ___, 191

L. Ed. 2d at 499). Regardless of an officer’s precise reason for initially stopping a

vehicle, “database searches of driver’s licenses, warrants, vehicle registrations, and

 - 10 -
 STATE V. MYERS MCNEIL

 Opinion of the Court

proof of insurance all fall within the mission of a traffic stop.” State v. Campola, ___

N.C. App. ___, ___, 812 S.E.2d 681, 688 (2018) (citation omitted).

 Defendant cites no authority for her proposition that Officer Henry’s “mission”

in the instant case must have been limited solely to verifying “that the male owner

was not driving the vehicle.” Rather, Officer Henry’s “mission” upon stopping

Defendant’s vehicle appropriately encompassed the two minutes and forty-six

seconds’ worth of “ordinary inquiries” incident to any traffic stop, including

conversing with Defendant in order to inform her of the basis for the stop, asking

Defendant for her driver’s license, and checking that the vehicle’s registration and

insurance had not expired. Rodriguez, 575 U.S. at ___, 191 L. Ed. 2d at 499; cf. State

v. Jackson, 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009) (“[A]n initial traffic

stop concludes and the encounter becomes consensual only after an officer returns

the detainee’s driver’s license and registration.”). Thus, Officer Henry was not, as

Defendant suggests, required to return to his vehicle at the moment he saw that a

female, rather than a male, was driving the vehicle, nor upon approaching Defendant

and learning that her husband was the owner of the car whose license was suspended.

 The routine information that Officer Henry sought to obtain from Defendant

“was simply time spent pursuing the mission of the stop.” Bullock, ___ N.C. at ___,

805 S.E.2d at 676. During the course of that mission, Defendant avoided rolling her

window all the way down, and Officer Henry also noticed that Defendant “kept

 - 11 -
 STATE V. MYERS MCNEIL

 Opinion of the Court

fumbling through the same amount of cards over and over again” in an attempt to

find her license. Meanwhile, Officer Henry could barely hear what Defendant was

saying because she was “mumbling” and had “[a] slight slur to her speech.” This

prompted Officer Henry to lean in very closely to the window, at which point he

smelled “the odor of alcohol coming from the vehicle.” Despite Defendant’s passenger

providing an excuse for the smell, such circumstances, along with his training and

experience, provided Officer Henry with reasonable suspicion to believe that

Defendant was intoxicated, warranting further investigation. See, e.g., Farrell v.

Thomas, 247 N.C. App. 64, 68, 784 S.E.2d 657, 660, appeal dismissed, 794 S.E.2d 318

(2016) (“[Defendant’s] glassy, bloodshot eyes and slurred speech alone created a

strong suspicion that [defendant] might be impaired.”); State v. Veal, 234 N.C. App.

570, 579, 760 S.E.2d 43, 49 (2014) (“Officer Cloer’s observations during the . . .

encounter (the odor of alcohol and an unopened container) established reasonable

suspicion to further detain and investigate the defendant.”).

 Because Officer Henry developed reasonable suspicion of a new offense while

he was in the process of completing his original mission in stopping Defendant’s

vehicle, the Fourth Amendment clock was in essence “re-set” so as to permit him to

extend the detention in order to inquire about that new violation. See Campola, ___

N.C. App. at ___, 812 S.E.2d at 691. Accordingly, the trial court properly denied

Defendant’s Motion to Suppress.

 - 12 -
 STATE V. MYERS MCNEIL

 Opinion of the Court

 Conclusion

 We elect to treat Defendant’s appeal as a petition for writ of certiorari. Officer

Henry lawfully stopped Defendant’s vehicle based on his reasonable suspicion that

the vehicle was being operated by a driver without a valid license. Before Officer

Henry completed the mission of the stop, he acquired reasonable suspicion that

Defendant was operating the vehicle while impaired. Officer Henry was therefore

permitted to extend his stop of Defendant in order to investigate the potential driving

while impaired offense. The trial court did not err when it denied Defendant’s Motion

to Suppress the evidence obtained from that subsequent lawful detention.

Accordingly, the trial court’s denial of Defendant’s Motion to Suppress is

 AFFIRMED.

 Judge STROUD concurs.

 Judge MURPHY dissents by separate opinion.

 - 13 -
 No. COA17-1404 – State v. Myers McNeil

 MURPHY, Judge, dissenting.

 I respectfully dissent from the Majority’s opinion, specifically its decision to

treat Defendant’s appeal as a petition for writ of certiorari and allowing of the same.

I agree with the Majority’s analysis as to the lack of jurisdiction and its recognition

that the district court clearly alludes to the existence of a “DWI judgment” in the

judgment portion of the AOC-CR-500 Form, Rev. 12/13. However, based on the

record before us it is impossible to determine if the superior court had jurisdiction to

conduct a trial de novo.

 In order for the superior court to have acquired jurisdiction over this matter,

Defendant was required to give oral notice of appeal or written notice of appeal within

10 days of entry of the judgment:

 Any defendant convicted in district court before the judge
 may appeal to the superior court for trial de novo. Notice of
 appeal may be given orally in open court, or to the clerk in
 writing within 10 days of entry of judgment. Upon
 expiration of the 10-day period in which an appeal may be
 entered, if an appeal has been entered and not withdrawn,
 the clerk shall transfer the case to the district or superior
 court docket.

N.C.G.S. § 7A-290 (2017) (emphasis added). The otherwise completed and signed

AOC-CR-500 Form containing the phrase “see DWI judgment[,]” contains a box for

the district court judge to check in the event that Defendant has given oral notice of

appeal. The district court judge left that box unchecked, indicating Defendant has
 STATE V. MYERS MCNEIL

 MURPHY, J., dissenting

not given oral notice of appeal in open court. Therefore, there is no showing that the

superior court obtained jurisdiction over this matter by Defendant giving oral notice

of appeal. As there was no oral notice of appeal, N.C.G.S. § 7A-290 requires a written

notice, but the record lacks any evidence of written notice of appeal to the superior

court. In sum, there is no showing in the record that Defendant filed a notice of

appeal within 10 days of the “DWI judgment.”

 Not only is the record lacking the actual district court judgment, which I would

entertain treating as a petition for writ of certiorari in this particular and

individualized circumstance, it lacks a showing that Defendant gave timely notice of

appeal to the superior court. If Defendant’s appeal was not timely, then the superior

court was without jurisdiction. As a result, I do not join the Majority in allowing a

sua sponte petition for writ of certiorari. Defendant’s case should be dismissed

without a discussion of the merits of his appeal. I respectfully dissent.

 2